[No. 10662-4-III. Division Three. October 3, 1991.]

PATRICK H. KOFMEHL, ET AL, *Appellants*, v. JAMES N. STEELMAN, ET AL, *Respondents*.

*Michael L. Loft* and *Layman, Loft, Arpin & White,* for appellants.

*Mark D. Rotchford* and *Rotchford & Bell; Frank Conklin* and *Murphy, Bantz & Bury,* for respondents.

GREEN, J.* — This is an action by Patrick H. Kofmehl and Linda M. Kofmehl, as sellers, to obtain specific performance of payments due under a real estate contract involving the sale of the Golden Door Motel in Spokane. The trial court concluded service by the Kofmehls of a notice of intent to declare forfeiture under RCW 61.30 constituted an election of remedies and dismissed the action. The Kofmehls appeal. We reverse and remand for trial.

---

*Judge Dale M. Green was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

On February 20, 1978, the Kofmehls sold the motel to Mr. and Mrs. James N. Steelman for $145,000 payable at $1,200 per month. The Steelmans were required to pay real estate taxes and maintain fire and casualty insurance. At that time, the motel had 13 units available to rent, a laundry room and a manager's apartment.

After the sale, two transfers by purchaser's assignments of contract and deed were made. First, on November 20, 1979, the Steelmans transferred their interest to the Wilson Investment Group XXXV,[1] an investment fund managed by realtor George Wilson. Second, on June 1, 1985, the Wilson Investment Group transferred its interest to Dale Kuder, d/b/a Interstate East, Inc., a Washington corporation now dissolved. Both assignments were approved by the Kofmehls. The Wilson Investment Group remained liable as a surety after their assignment to Mr. Kuder.

Mr. Kuder began remodeling the motel. The City required him to remove old gas storage tanks and level the lot at an unanticipated cost of $35,000. As a result, he borrowed $20,000, secured by a second mortgage on the property, and spent an additional $10,000 to $15,000 of his own money. During October 1986, Mr. Kuder ceased making monthly payments and was unable to pay the real estate taxes or maintain the insurance required by the contract. At the time of default, the motel was in a state of demolition. Only three units were available for rent.

Early in 1987, Mr. Kofmehl talked to Mr. Wilson about the delinquent payments and Mr. Wilson assured him Mr. Kuder would soon have cash from a pending sale of other real estate. Nonetheless, Mr. Kofmehl hired Jerry Kagele, an attorney, to collect the delinquent funds.

On June 1, 1987, Mr. Kagele sent Mr. Wilson a "Notice of Intention to Declare Forfeiture of and Cancel Contract Pursuant to Chapter 61.30.010 R.C.W. et seq." The notice specifically referred to the delinquent payments for the period November 1986 through March 1987. The notice stated

---

[1] The heading for this action lists Wilson Investment Group XXV; we note from the record the name is Wilson Investment Group XXXV.

failure to cure the delinquency by September 11 would result in forfeiture of the contract. No reference was made to payments due after March 1987 nor the delinquent real estate taxes or insurance premiums.

On June 24, Mr. Kagele realized his office had inadvertently failed to send the same notice to Mr. Kuder. He immediately sent a notice to Mr. Kuder with a cure date of October 1, 1987, and the notice was recorded. A copy of this notice was not sent to Mr. Wilson, the Steelmans or the Wilson group investors.

During the fall of 1987, negotiations were conducted in an attempt to settle the matter. Mr. Kuder's offer of $5,000 and an increase in the monthly payments was rejected. At that time, Mr. Kagele told counsel for Mr. Kuder that the Kofmehls "wished" to proceed with forfeiture. However, no declaration of forfeiture was signed, recorded or sent to any of the parties. Instead, this action for specific performance was instituted in May 1988.

First, the Kofmehls contend the court erred in holding the notice of intent to declare a forfeiture constituted an election of remedies precluding this action for specific performance. The Kofmehls contend the delivery of the preliminary notice did not constitute an election of remedies, a conclusion supported by case law from other jurisdictions. On the other hand, Mr. Kuder and Mr. Wilson argue the issue is whether the court abused its discretion in failing to grant specific performance. We agree with the Kofmehls.

Here, the notice of intent to declare a forfeiture was issued pursuant to RCW 61.30.010 *et seq.* That statute, referred to as the Real Estate Contract Forfeiture Act, effective January 1, 1986, created a nonjudicial procedure for forfeiture of a purchaser's rights under a contract. It was a significant departure from similar rules developed at common law. *See* Hume, *The Washington Real Estate Contract Forfeiture Act*, 61 Wash. L. Rev. 803 (1986). The language of a statute will be held to mean exactly what it says and rules of construction will not be applied if the statute is free of ambiguity. *Clarke v. Equinox Holdings,*

*Ltd.*, 56 Wn. App. 125, 130, 783 P.2d 82, *review denied*, 113 Wn.2d 1001 (1989).

RCW 61.30.030 requires certain conditions be met before forfeiture occurs:

> (1) The contract being forfeited, or a memorandum thereof, is recorded in each county in which any of the property is located;[2]
> (2) A breach has occurred in one or more of the purchaser's obligations under the contract and the contract provides that as a result of such breach the seller is entitled to forfeit the contract;[3] and
> (3) Except for petitions for the appointment of a receiver, no arbitration or judicial action is pending on a claim made by the seller against the purchaser on any obligation secured by the contract.

RCW 61.30.020 provides in part:

> A purchaser's rights under a real estate contract shall not be forfeited except as provided in this chapter. Forfeiture shall be accomplished by giving and recording the *required notices* as specified in this chapter.

(Italics ours.) RCW 61.30.010(8) defines required notices as "the notice of intent to forfeit *and* the declaration of forfeiture. " (Italics ours.) Thus, the statute requires serving and recording both the notice of intent to declare forfeiture *and* the declaration of forfeiture. *See Schultz v. Werelius*, 60 Wn. App. 450, 453, 803 P.2d 1334, *review denied*, 116 Wn.2d 1027 (1991).

■ The notice of intent here was served and recorded as required by RCW 61.30.040(5), but a declaration of forfeiture was not signed, served or recorded. The serving and filing of the declaration of forfeiture is at the seller's discretion. RCW 61.30.070(2).[4] Having failed to complete the forfeiture,

---

[2]There is no indication the contract in this particular instance was recorded; however, no issue has been raised regarding failure to record.

[3]The contract so provides.

[4]Former RCW 61.30.070(2), in effect at the time, provides in part:
"If the default is not cured as provided in RCW 61.30.090, the seller *may* forfeit the contract by giving and recording a declaration of forfeiture . . .". (Italics ours.)

the Kofmehls could pursue any other remedy available to them. RCW 61.30.020. For example, in *Schoneman v. Wilson*, 56 Wn. App. 776, 785 P.2d 845 (1990), the seller filed a notice of intent to declare forfeiture in 1986 and the purchaser attempted to cure the default within the allotted time period. The funds were rejected by the seller who then sought a decree quieting title to the land, arguing the contract had been mutually abandoned. The court held that action was not precluded by the sending of a notice of intent to forfeit under RCW 61.30.020. *Schoneman*, at 780-81. Thus, we conclude the court erred by dismissing the action for specific performance.

Second, the Kofmehls contend the court erred in ruling they were equitably estopped from seeking specific performance. We agree.

Since specific performance is an action in equity,[5] *Cascade Timber Co. v. Northern Pac. Ry.*, 28 Wn.2d 684, 711, 184 P.2d 90 (1947), it is subject to equitable defenses such as estoppel. Equitable estoppel consists of three elements: (1) an admission, statement or act inconsistent with a claim afterward asserted, (2) action by another in reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission. *Schoneman v. Wilson, supra* at 783 (citing *Board of Regents of UW v. Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987)). None of these elements is established here. First, a suit for specific performance is not inconsistent with a lapsed notice of intent to declare forfeiture. Second, there is no evidence either Mr. Wilson or Mr. Kuder detrimentally relied on the notice or Mr. Kagele's statement he would proceed with the forfeiture. In fact, Mr. Wilson specifically stated he did not change his position. Mr. Kuder stated after his $5,000 check

---

[5]"A trial court, sitting in equity, may fashion broad remedies to do substantial justice . . .". *Carpenter v. Folkerts*, 29 Wn. App. 73, 78, 627 P.2d 559 (1981). The court may award damages to make the parties whole. *Carpenter*, at 80; *Rekhi v. Olason*, 28 Wn. App. 751, 757, 626 P.2d 513 (1981); *Streater v. White*, 26 Wn. App. 430, 433, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980).

was rejected, he realized additional cash might result in settlement but he could not raise those funds. He then ceased remodeling and merely maintained the property. Finally, there is no evidence either Mr. Wilson or Mr. Kuder sustained injury as a result of the failure to file the declaration of forfeiture. It is our view the court erred in dismissing the claim for specific performance.[6]

The dismissal is reversed and the cause is remanded for retrial.

THOMPSON, A.C.J., and MUNSON, J., concur.

---

[6]The Kofmehls contend Mr. Wilson remains liable as a surety. That issue was not addressed at the trial court because of the dismissal. It is a proper issue to be decided on remand.