[No. 13711-2-III. Division Three. January 9, 1996.]

PATRICK H. KOFMEHL, ET AL., *Appellants*, v. JAMES N. STEELMAN, ET AL., *Defendants, and* GEORGE WILSON, *Individually and as Trustee*, ET AL., *Respondents*.

---

[5]RCW 9.41.042 defines the circumstances under which it is permissible for a child to possess a firearm.

*Michael L. Loft* and *Layman, Loft, Arpin & White,* for appellants.

*Mark D. Rotchford* and *Rotchford & Bell*; and *Frank Conklin*, for respondents.

SWEENEY, C.J. — The facts of this case are set out in some detail in this court's opinion, *Kofmehl v. Steelman,* 63 Wn. App. 133, 816 P.2d 1258 (1991). We will not repeat those facts other than to note that we reversed the trial court and held that the filing of a notice of intent to declare a forfeiture was not an irrevocable election of remedies. The case was then remanded.

Following remand, the property that was the subject matter of the contract had gone into default for nonpayment of taxes. Patrick and Linda Kofmehl, the original contract vendors, purchased the property with a $60,012 bid at the county tax sale. The bid price included $11,973.55 for delinquent taxes, aquifer protection, and delinquent utility charges. The remaining $48,038.45 was refunded to the Kofmehls, the record owners. That event and the legal consequences which flow from it generate the current controversy.

Following the tax sale, the court held a hearing and again dismissed the Kofmehls' suit for specific perfor-

mance. It concluded that the tax deed "extinguished all rights of the former owners entitled to the property and vested those rights in the Plaintiff." The court awarded damages to the Kofmehls for accrued interest on the contract, delinquent taxes, assessments, and insurance premiums, all of which were incurred before the tax sale. The court held George Wilson and Dale Kuder jointly and severally liable. Wilson obtained a judgment over and against Kuder. The Kofmehls again appeal and claim they are entitled to specific performance of the contract despite purchasing the property at the tax sale.

Although the Kofmehls assign error to a number of findings of fact, the question presented is one of law. It is also one of first impression in this state. We are asked to decide whether a contract vendor of a real estate contract loses the right to specific performance by buying the property at a tax sale.

We turn first to the rights and obligations under the real estate contract and identify the nature of the legal interest created in both the vendor and vendee. Second, we determine whether a tax foreclosure sale affects those legal interests.

 The legal interests which follow a real estate contract have been the subject of two recent opinions. *In re McDaniel*, 89 B.R. 861 (Bankr. E.D. Wash. 1988); *Tomlinson v. Clarke*, 118 Wn.2d 498, 825 P.2d 706 (1992). Although those cases focused on the rights of the buyer rather than the seller, both are instructive. In *McDaniel*, the question was whether the real estate contract was to be treated as an executory contract or as a lien-type security device. *McDaniel*, 89 B.R. at 863. Following an excellent summary of the development of real estate contract law in Washington, Judge Rossmeissl concluded it was the latter:

> Washington treats the seller's interest under a real estate installment sales contract as a lien/mortgage-type security interest in real property. Washington does not now, nor has it for a long time, considered the purchaser's interest under a

real estate installment sales contract as creating a "mere" contract right. The remedies provided to the seller in the case of breach or nonperformance are those of a secured creditor. Washington law considers the purchaser's interest under the real estate contract as a property interest and the seller's interest under the contract as a lien-type security device.

*McDaniel*, 89 B.R. at 869. That conclusion has also been accepted by our Supreme Court. *Tomlinson*, 118 Wn.2d at 509-10 ("We find no relevance in the historical distinction between real estate contracts and other forms of real property security devices. There is no valid reason to distinguish between those cases in which legal title is conveyed to secure the payment of a debt and those cases in which legal title is retained to secure the payment of a debt.").

Because a real estate contract is a lien-type security interest, the obligation is distinct from the security itself— the real property. A tax sale, as an in rem proceeding,[1] affects the security—the real estate—but does not affect the original obligation. The effect of the tax foreclosure sale is to limit the rights of those holding junior liens or interests and protect the property rights of the person purchasing the property at a tax sale. *Lake Arrowhead Community Club, Inc. v. Looney*, 112 Wn.2d 288, 291, 770 P.2d 1046, 7 A.L.R.5th 1034 (1989). Buying the property at a tax sale, the purchaser acquires title to the property free and clear of most claims, including those created by a real estate contract. RCW 84.60.010 (indicating tax liens have priority before any recognizance, mortgage, judgment, debt, obligation, or responsibility to which property may be liable).

The vendor's lien-type security interest in a real estate contract is a personal right as distinguished from the real property rights affected by a tax sale. *Freeborn v. Seattle Trust & Sav. Bank*, 94 Wn.2d 336, 340, 617 P.2d 424 (1980) (holding right to receive contract payments is personal

---

[1]*Sparks v. Standard Lumber Co.*, 92 Wash. 584, 586, 159 P. 812 (1916); *Label v. Cleasby*, 13 Wn. App. 789, 791, 537 P.2d 859 (1975) (stating tax foreclosure sales are in rem actions), *review denied*, 86 Wn.2d 1013 (1976).

property). Nothing in the nature of the sale of property pursuant to RCW 84.64.080 limits the lien-type security rights or obligations of the parties created by the real estate contract. As a result, buying the property at a tax sale does not deprive the contract vendor of rights or remedies available under the contract, including the remedy of specific performance. The vendor's interests remain intact. Contrary to the finding of the trial judge, the contract is not "extinguished."

■ The trial court's award of money damages here did not provide the Kofmehls a complete remedy. A vendor is entitled to specific performance of a contract for the sale of land because a money judgment cannot provide as complete a remedy. *Tombari v. Griepp*, 55 Wn.2d 771, 775-76, 350 P.2d 452 (1960); Dan B. Dobbs, *Law of Remedies* § 12.13, at 861 (1973). " '[D]amages are not the same as being rid of all the liabilities of land, with the net purchase price in one's pocket', and are therefore inadequate." 3 *American Law of Property* § 11.68, at 173 (A. James Casner, ed., 1974) (quoting Fry, *Specific Performance* § 23 (6th ed. 1921)).

■ Wilson and Kuder argue that specific performance is an improper remedy because the Kofmehls had a plain, speedy and adequate remedy at law. They could have paid the taxes and avoided the tax foreclosure sale. "Any person owning an interest in lands or lots upon which judgment is prayed, as provided in this chapter, may in person or by agent pay the taxes, interest and costs due thereon to the county treasurer of the county in which the same are situated, at any time before the day of the sale . . . ." RCW 84.64.060. That begs the question, however, of whether they had an obligation to do so. The general rule is that the party in possession and receiving the use and income of the property is obligated to pay taxes and assessments. 3 *American Law of Property* § 11.35, at 101. As the Wisconsin Court of Appeals explained:

> While it is true that the land contract vendor could have redeemed the mortgaged property, preserving its availability

in satisfaction of the land contract, he declined to do so. Were we to require the vendor to protect title to the property in order to pursue a money judgment claim against the vendee, we would be essentially requiring the land contract vendor to remedy the vendee's default. It is unfair to place financial responsibility upon the land contract vendor who was innocent of any wrongdoing and who is fully prepared and able to discharge his obligations under the land contract except for the land contract vendee's breach of its terms.

*Paulson v. Lisowy,* 152 Wis. 2d 41, 447 N.W.2d 374, 375-76, *review denied,* 449 N.W.2d 278 (1989).

■ Wilson and Kuder suggest that the quality of legal title obtained at the tax foreclosure sale differs from the title which was the subject matter of the contract. And they argue that the Kofmehls cannot therefore perform their contractual duty to deliver title and are not, therefore, entitled to specific performance. The character or quality of title possessed by the vendor at the time a contract is made does not necessarily determine the title which must be conveyed. *See Wittick v. Miles,* 274 Or. 1, 545 P.2d 121 (1976). In *Wittick,* the contract required conveyance of the property free of encumbrances even though, at the time the contract was made, there was an encumbrance on the property. Indeed, a vendor who is willing and able to convey title to the land may compel specific performance of a contract for the sale of land even if, at the time the contract was made, the vendor did not have title but later acquired it. 3 *American Law of Property* § 11.15, at 44-45.

■ A decree of specific performance should return the parties to the condition in which they would have been placed had the contract been performed. *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 96 Wn.2d 973, 983-84, 634 P.2d 837, 640 P.2d 710 (1981). The Kofmehls are entitled to specific performance of the contract, that is, payment of all sums to which they are entitled under the contract in exchange for delivery of title to the property. The sums to which they are entitled include the balance

of the purchase price, all accrued unpaid interest, and reimbursement of their $11,973.55 payment at the tax sale. Wilson and Kuder are entitled to the property regardless of the manner in which the Kofmehls retained, recovered or acquired title.

Award of Attorney Fees. The Kofmehls request attorney fees pursuant to section 6 of the real estate contract. The contract provides that in case the vendors bring any action to enforce the terms of the agreement, the purchasers shall pay, in addition to the costs, a reasonable sum for attorney fees.

■ RCW 4.84.330 requires that fees be paid to the prevailing party. The language of the statute is mandatory with no discretion except as to the amount. *Farm Credit Bank v. Tucker*, 62 Wn. App. 196, 207, 813 P.2d 619 (indicating no discretion allowed as to whether fees are permissible, but only as to the amount), *review denied*, 118 Wn.2d 1001 (1991). The Kofmehls are the prevailing party on appeal and entitled to attorney fees.

Existence of Suretyship. Finally, Wilson contends he was a surety for the performance of the contract and the Kofmehls' extension of time for payment without his knowledge or consent discharged him. The suretyship issue was not decided in the original appeal. We stated that it was an appropriate issue for resolution on remand. *Kofmehl v. Steelman*, 63 Wn. App. 133, 139 n.6, 816 P.2d 1258 (1991). Apparently, it was resolved with the trial court finding Wilson and Kuder jointly and severally liable on the judgment to the Kofmehls. Wilson has also obtained judgment against Kuder. In any event, there was no assignment of error to any of the court's findings or conclusions between the Kofmehls and Wilson. *Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.*, 44 Wn. App. 409, 413, 722 P.2d 861 (1986).

We reverse the judgment of the trial court and remand the case with instruction to award the Kofmehls specific performance of the contract.

GREEN, J. Pro Tem., concurs.

MUNSON, J. (concurring specially) — I agree with the majority that the land contract is a two-part instrument, namely, a contract for the sale of land and the retention of a "lien-security" interest. When Patrick and Linda Kofmehl chose to bid at the sale rather than pay the outstanding indebtedness to the county treasurer by the day before the sale, were the successful purchasers, and accepted the deed from the county, they still had a contract for the sale of the land, but they lost their "lien-security" interest; so now they have a contract for the sale of land which includes the outstanding balance plus interest plus whatever amount they paid at the tax sale. They are entitled to specific performance of that contract of sale, but must agree to convey title when paid in full. However, they are unable to forfeit the contract.