[No. 53364-9-I.   Division One.   July 5, 2005.]

CREST INC., *Appellant,* v. COSTCO WHOLESALE CORPORATION ET AL., *Respondents.*

762

*Richard A. Davis III* and *Michelle D. Losie* (of *Chmelik Sitkin & Davis, P.S.*), for appellant.

*Mark G. Jackson* and *Athan E. Tramountanas* (of *Preston Gates & Ellis, L.L.P.*), for respondents.

¶1 GROSSE, J. — ██ Damages recoverable for a breach of contract are those which

> "may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it".[1]

This corresponds with the general rule governing damages for breach of contract: that the aggrieved party should be put in the same economic position it would have attained had the contract been performed. Here, the trial court correctly determined that under the contract Crest Incorporated (Crest) failed to properly cure the concrete slab, which resulted in a material breach. Costco Wholesale Corporation (Costco) had a protected expectation interest in attaining the benefit of its bargain and must be put in as good a position as it would have been had Crest properly performed. The decision of the trial court regarding the liability for the removal and replacement of the concrete slab is affirmed.

¶2 In determining the amount of attorney fees to be awarded to the prevailing party, the proper method for calculating a reasonable award of attorney fees is the lodestar method. The lodestar approach sets fees by multiplying a reasonable hourly rate by the number of hours reasonably spent on the lawsuit. A trial court must consider a number of factors and articulate its decision in writing. Here, the trial court limited fee recovery to the amount customarily charged in Whatcom County. Although local fees are one factor in determining the reasonableness of the fee, there are other factors which should be considered and addressed by the trial court. The trial court abused its discretion by failing to provide a written basis for the limitation sufficient for this court to accomplish proper

---

[1] *Gaglidari v. Denny's Rest.*, 117 Wn.2d 426, 446, 815 P.2d 1362 (1991) (quoting *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854)).

review. The award of attorney fees must be reversed and remanded for proper consideration.

## FACTS

¶3 This case involves a construction subcontract between general contractor Barclay Dean Construction (BD) and subcontractor Crest for work on the expansion of Costco's Bellingham store. Under the contract, Crest provided supervision, materials, labor, supplies, and equipment for installation of concrete work, specifically for the pouring of concrete slab floors for the expansion.

¶4 In late June 2001, BD and Crest entered into a contract where Crest agreed to pour concrete slabs in three separate phases for the Costco store addition. After the pour of the phase II slab, BD deemed the slab to be defective and ordered removal and replacement.

¶5 Crest poured the original phase II slab on September 11, 2001. A few hours after the pour, Crest began cutting control joints in the slab, to control the location of shrinkage cracks. This process usually makes most cracking occur within the joints and not on the slab surface. However, random cracking began to appear on the slab shortly after Crest completed the work. Under the contract, Crest was not to add water to the concrete once it arrived on the project site. Crest was aware of this requirement, but some water was added to at least one truckload. The contract required Crest to employ an "early entry saw cut" system for the control joints, specifically calling this a "[g]reen cut." Crest used a conventional cut, attempting to cut one-inch deep joints, something BD's expert claimed was done too late and not deep enough. The contract required Crest to align the control joints, which was not accomplished and was called sloppy and not workmanlike by BD's expert. The contract required the work done by Crest to reflect the best possible workmanship. Six out of a total of 20 panels of concrete cracked, a number reputed to be 10 times the industry standard.

¶6 BD rejected the slab and ordered Crest to remove it and replace it with a properly poured slab. Crest argued that the slab exceeded strength standards and could be fixed without the expense of tearing it out and replacing it. But BD demanded that a new one be poured.

¶7 The parties disagree whether the contract required Crest to water cure the slab. Part of the disagreement stemmed from the fact that BD's own on-site superintendent suggested using a chemical cure at the time of the pour or shortly thereafter. However, contrary to its argument, Crest failed to use either a water cure or a proper chemical cure. Crest used a chemical sealer in an attempt to cure the concrete. The contract required Crest to water cure the slab. Even the owner and president of Crest admitted the contract called for a water cure.

¶8 Crest conceded it deviated from the exact contract specifications but argued that any of the deviations did not affect either the serviceability or the appearance of the slab. Negotiations about whether the slab could be properly repaired so Costco would be pleased with the result followed. Crest offered to repair the cracks according to its view of the specifications, but BD and Costco refused.

¶9 After attempts at negotiations, with Crest exhausting efforts to avoid full replacement of the original slab, Crest removed and replaced the original slab. Shortly thereafter Crest completed its work; however, BD refused to make its final payment to Crest, indicating that BD required the releases called for by the contract before it would make the final payment.

¶10 Crest sued for breach of contract and to foreclose a lien it recorded against the Costco property. Crest sought total damages of approximately $85,000.00, including $43,510.53 for the removal and replacement of the slab; $26,918.00 for the final payment, and $14,418.24 for other items in dispute. A pretrial stipulation was entered setting forth that the cost of removal and replacement of the slab and a few other items were in dispute, but that the final

payment was not in dispute, and BD refused to pay due to the lack of a release.

¶11 At the end of the bench trial, the court granted judgment for Crest for the unpaid balance of the contract, with prejudgment interest, and for change orders, for a total of $45,368.61. However, the trial court did not award Crest the damages it sought for removal and replacement of the original slab, holding that BD prevailed in defending that claim. The trial court found that Crest varied from the specifications creating deviations but that these deviations in themselves were not material. However, the trial court concluded that Crest was obligated to properly "cure" the concrete slab and that its failure to properly cure the slab was a material breach.

¶12 The contract between BD and Crest included a litigation costs paragraph that provides for reasonable attorney fees. The trial court awarded fees in proportion to the time spent on the issues of the case as tried. Without carving up the various theories of the "pour" issue, the court found that "by far the most time in the case dealt with the concrete slab issue," and because BD prevailed on the issue, it was entitled to 90 percent of its fees and costs. Those fees amounted to $108,148.80. The trial court ordered that "the attorneys fees are to be calculated using Whatcom County rates—i.e., that the highest hourly rate is $180.00, and the other billers' hourly rates are to be proportionally reduced." After the awards were offset, BD received a net judgment of $62,780.19.

## ANALYSIS

### Crest's Appeal

¶13 Crest claims the trial court erred in determining that it materially breached the contract and that BD was justified in ordering Crest to remove and replace the concrete slab without additional payment.

¶14 Initially, Crest argues the trial court erred in concluding that the contract required Crest to apply a

water cure to the original slab. We disagree. Crest claims that specification section 3320, not section 3300, governs the pouring of the original slab. The record provides an abundance of evidence indicating that both sections pertain to, and are related to each other, and govern the pour. Section 3320 incorporates section 3300 by reference. Even Crest acknowledges that American Institute of Architect's Document A201 required it to perform to the requirements of the contract drawings even if the requirements are not set forth in the specifications. The subcontract incorporated the fact that the entire project was to be done in accordance with the main contract between Costco and BD, including the drawings and specifications. The contract unequivocally required Crest to water cure the slab. A water cure was not done.

¶15 But Crest asserts that even if the contract required it to water cure the slab, there was no material defect in the poured slab and there was insufficient evidence to find that the original slab did not properly cure or cure at all. We disagree. The expert witnesses regarding concrete matters, Eugene Dale, the expert called by BD, and Alan Kramer, the expert called by Crest, testified that proper curing occurs by either a water or chemical cure. Dale testified that neither of the processes took place on this slab. Kramer testified that the slab cured on its own with few defects.

¶16 There was conflicting evidence regarding whether the slab exhibited traits of an improperly cured slab, and there was evidence in the record indicating that the failure to cure resulted in an unacceptable slab that had to be removed and replaced. Crest did not challenge the trial court's Finding of Fact No. 14 that if no cure occurred to the slab, it would not pass in the concrete trade, and removal was required. Crest does not specifically challenge that finding, but does challenge the determination that no cure happened at all. As noted, there was expert testimony that the only acceptable cures were either a water cure or a chemical cure, and there is expert testimony that neither happened here. Crest now argues the slab properly cured

on its own. But the evidence indicates that curing on its own is not acceptable to meet industry standards. Eugene Dale, BD's expert witness, testified that the slab did not meet standards acceptable in the relevant concrete trade based on his review of the photographs entered into evidence and after his review of the videotape of the slab. Even in the face of strength tests showing that the strength of the panels exceeded the specifications, BD's expert testified that a lack of cure, or as he called it, "rapid drying," helped set up the cracking, and that strength and durability are in issue, and that the original slab would not be as good as if the slab was fully and properly cured.

¶17  There was also testimony by Dale that cracks in the slab, and the maintenance costs resulting from them, led to the determination that the slab should be replaced. He testified that because of the problems the slab did not meet industry standards and the work did not reflect the best possible workmanship.

¶18  Crest argues that BD's on-site superintendent, Dale Cullivan, did not agree that the replacement of the slab was warranted. But this argument is not supported. Cullivan was of the opinion that the slab quality was poor and called BD's project manager to report problems with it. Cullivan denied making a statement that removal was not warranted and had no recollection of saying the slab was good. But whether Cullivan believed the slab could be saved by repair rather than replacement was of little consequence in any event because he admitted he did not have the authority to reject the slab. The finding that the slab was not properly cured is supported and will not be disturbed on appeal.

¶19  Additionally, there is support for the trial court's determination that BD did not breach the contract by ordering Crest to remove and replace the slab without additional payment. Crest asserts the trial court should have allowed damages based on a lesser repair of the slab. The trial court did not address the issue because it found that BD and Costco's expectation interest was the proper

remedy, thus requiring removal and replacement as damages. The trial court determined that the original slab did not conform to the contract requirements and that the slab was defective. Under the contract, the appropriate remedy for a defective slab is removal and replacement. Crest's argument to the contrary fails because it did not prove that repair would have been adequate. Although Crest did propose an alternate equitable remedy, there was evidence that this proposed remedy was not an adequate repair for the slab due to the decreased durability and because the long-term maintenance on the slab would be substantial.

¶20 Section 344(a) of the *Restatement (Second) of Contracts* (1981) discusses the purposes of the judicial remedies available to protect an "expectation interest" of a promisee:

> (a) his "expectation interest," which is his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.

¶21 This is what the trial court accomplished through its holding. The court enforced the broken promise by protecting the expectation that Costco and BD had when they made the contract as agreed by Crest under the contract. Thus, Costco and BD receive the benefit of their bargain by replacing the slab with one that conformed to the contract.

¶22 Crest argues the case of *Eastlake Construction Co. v. Hess*[2] applies, and that repair of the slab was the proper remedy of any damages. We disagree. The court in *Eastlake*[3] held that an injured party in a construction contract may recover either " '(a) the diminution in the market price of the property caused by the breach, or (b) the reasonable cost of completing performance or of remedying the defects *if* that cost is not clearly disproportionate to the probable loss in value.' " This has been called the theory of economic waste. But this equitable defense of economic waste begs the question. The contract provided that if the

---

[2] 102 Wn.2d 30, 686 P.2d 465 (1984).

[3] *Eastlake*, 102 Wn.2d at 47 (emphasis added) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 848, at 119-20).

slab was defective it must be replaced. There is no evidence of waste to support Crest's theory.

¶23 Crest cites cases from other jurisdictions to support its claim that it is entitled to recover the cost of replacing the slab.[4] But the facts of those cases show the product(s) installed by the contractor, along with a proposed method of repair, was at least equal if not better than the specified product, or that the contractor substantially performed under the contract. Here, the trial court found that the original slab poured by Crest did not meet contractual specifications and did not meet performance standards. This makes the case distinguishable from the cases allowing a repair damage award. The trial court did not err.

¶24 Crest also argues the trial court erred at trial by excluding an admission by an employee of BD known as "Robert," a night superintendent or night foreman on the project site. Counsel for Crest made an offer of proof that "Robert" would testify that he had come from a Costco concrete pour in Arizona that was defective and that due to the Arizona pour, this one was doomed from the beginning. Crest contends the statement was an admission of a party opponent and an exception to the hearsay bar.[5] We disagree and find the trial court did not err.

■■ ¶25 The admission of relevant evidence is a matter addressed to the discretion of the trial court.[6] The trial court excluded the testimony because the proffered statements were hearsay and lacked foundation. The court found there was no proof that "Robert" had any authority or that he was a speaking agent for BD. Statements made by a party's agent are not admissible unless the speaker had authority to make such a statement.[7] Here, there was no proof that "Robert" had requisite authority to speak for BD.

---

[4] See Granite Constr. Co. v. United States, 962 F.2d 998, 1006 (Fed. Cir. 1992); Hansel v. Creative Concrete & Masonry Constr. Co., 2002-Ohio-198, 148 Ohio App. 3d 53, 772 N.E.2d 138.

[5] ER 801(d)(2).

[6] Maehren v. City of Seattle, 92 Wn.2d 480, 488, 599 P.2d 1255 (1979).

[7] Codd v. Stevens Pass, Inc., 45 Wn. App. 393, 404-05, 725 P.2d 1008 (1986).

¶26 Crest also asserts the trial court abused its discretion by awarding BD 90 percent of its attorney fees. As noted above, the contract allowed for an award of attorney fees to the prevailing party in the litigation. RCW 4.84.330 mandates the award of fees to the prevailing party, with no discretion except as to the amount.[8] A trial court abuses its discretion only when its decision is manifestly unreasonable.[9] The "prevailing party" for the purposes of a contractual provision for an award of attorney fees is usually one who receives judgment in his or her favor. But, if neither party wholly prevails, as here, then the party who substantially prevails is the prevailing party. That determination turns on the extent of the relief awarded the parties.[10] When there are several conflicting claims at issue, a defendant is awarded attorney fees for those claims it successfully defends, and plaintiff is awarded attorney fees for those claims upon which it prevails, and the awards should be the offset.[11]

¶27 Crest argues it is entitled to attorney fees and costs because it is the prevailing party. Crest then parses out the issues that were before the trial court, including the separation of various theories on the slab pouring issue. But the trial court determined that BD was the prevailing party for the concrete slab issue. The trial court determined that Crest was the prevailing party for a number of smaller issues: the painting issue, the top nailer plate issue, the caulking issue, the concrete cutting and removal issue, the broom finish issue and the issue of prejudgment interest. The court awarded the fees on the basis of the amount of time the parties spent on the various issues at trial. Since BD prevailed in defending the major claim of the case, the trial court did not err in finding it to be the prevailing party. Issues other than the one surrounding the slab were either

---

[8] *Kofmehl v. Steelman*, 80 Wn. App. 279, 286, 908 P.2d 391 (1996).

[9] *Beckman v. Wilcox*, 96 Wn. App. 355, 367, 979 P.2d 890 (1999).

[10] *Riss v. Angel*, 80 Wn. App. 553, 564, 912 P.2d 1028 (1996) (citing *Marassi v. Lau*, 71 Wn. App. 912, 915-16, 859 P.2d 605 (1993)).

[11] *Marassi*, 71 Wn. App. at 917.

contained in agreed stipulations before trial or subject to minimum time at trial. Crest does not assign error to the finding of fact that "by far the most time in the case dealt with the concrete slab issue." Here, Crest maintained that BD breached the contract by requiring Crest to replace the slab without paying it additional monies. BD successfully defended that claim. This was the major claim, taking up 90 percent of the trial time. The trial court did not abuse its discretion.

*BD's Cross-Appeal*

¶28 On cross-appeal, BD claims the trial court abused its discretion limiting the award of fees to the hourly rates customarily charged in Whatcom County. "This court reviews the reasonableness of attorney fees awards under an abuse of discretion standard."[12]

¶29 Under the contract, the trial court awarded attorney fees to BD as the prevailing party. In the absence of a predetermined method set forth in the contract itself, the proper method for the calculation of a reasonable fee award is the lodestar method.[13] The lodestar approach sets fees by multiplying a reasonable hourly rate by the reasonable number of hours spent on the lawsuit.[14] This method dictates that attorney fees are calculated by establishing a lodestar fee and then adjusting it up or down based on other external factors.[15]

¶30 Here, in awarding attorney fees, the trial court limited the award to the amount customarily charged by attorneys in Whatcom County. On this basis, the amount awarded was $108,148.80. However, the trial court failed to provide a written basis for the limitation, it merely set forth

---

[12] *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 665, 989 P.2d 1111 (1999).

[13] *Edmonds v. John L. Scott Real Estate, Inc.*, 87 Wn. App. 834, 856-57, 942 P.2d 1072 (1997).

[14] *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 149-50, 859 P.2d 1210 (1993); *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 72, 847 P.2d 440 (1993).

[15] *See generally Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597-99, 675 P.2d 193 (1983).

the customary fees charged in Whatcom County and limited the fees to that amount. While there is no dispute as to the number of hours spent on the matter, the dispute centers on the hourly charge determined to be reasonable by the trial court. BD admits that one of the factors in determining whether an attorney's rate is reasonable is to look at the fee customarily charged in the locale for similar legal services.[16] But local fees are just one factor in determining the reasonableness of fees. There are other factors to be considered and addressed by the court.[17] The record reflects minimal evidence regarding a local versus state standard for the grant of fees. For that reason, remand is required.

¶31 While fee decisions are entrusted to the discretion of the trial court, this court will exercise its supervisory role to ensure that discretion is based on articulable grounds. Here, the trial court failed to provide a written basis for the limitation sufficient for this court to accomplish a considered review. The trial court's determination of the amount of the fee is reversed and the case is remanded to the trial court for a determination of the fee considering all applicable factors and to provide a written, articulable basis for its determination.

¶32 BD also argues on cross-appeal that the trial court erred in awarding prejudgment interest on the amount of the final payment it owed to Crest at a time BD asserts a contractual condition precedent had not been met.

¶33 In its findings of fact, the trial court set forth that Crest had been demanding payment from BD on

[16] *See Mahler v. Szucs*, 135 Wn.2d 398, 433 & n.20, 957 P.2d 632 (1998). (The "[lodestar] methodology can be supplemented by an analysis of the factors set forth in RPC 1.5(a) which guide members of the Bar as to the reasonableness of a fee." Included in that section is subsection (3), which states that one of the factors is "[t]he fee customarily charged in the locality for similar legal services.")

[17] Other factors include: "[t]he time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly and the terms of the fee agreement between the lawyer and the client." Additional factors include the amount involved in the matter and the results obtained, the nature and length of the professional relationship with the client, and the experience, reputation, and ability of the lawyers performing the service. RPC 1.5(a).

agreed-to liquidated amounts. But BD refused to pay because Crest refused to sign a general release form. The court noted that while Crest failed to present a partial release, BD failed to pay the agreed amount into the court's registry while admitting that the amount was owed. The court found that equity played a role in its determination and that BD did not dispute that it owed the money to Crest. In fact, BD agreed that it owed Crest the amount of the payment in a pretrial stipulation. The court found that BD should have paid the undisputed amount into the court's registry, or to Crest in exchange for whatever documentation BD thought it needed to protect itself. Therefore, the court determined that Crest was entitled to prejudgment interest on the liquidated amount BD withheld.

¶34 "A trial court's award of prejudgment interest is reviewed for an abuse of discretion."[18] "Prejudgment interest is allowed in civil litigation at the statutory judgment interest rate, RCW 4.56.110, RCW 19.52.020, when a party to the litigation retains funds rightfully belonging to another and the amount of the funds at issue is liquidated, that is, the amount at issue can be calculated with precision and without reliance on opinion or discretion."[19]

¶35 Prejudgment interest is a make-whole remedy which is grounded in the " ' "sense of justice in the business community . . . that he who retains money which he ought to pay to another should be charged interest on it." ' "[20] The touchstone for an award of prejudgment interest is that a party must have the use value of the money withheld. Here, although BD believed it had a right to withhold payment awaiting a release from Crest, it also stipulated to the fact that it owed Crest the money. If BD wanted to protect itself

---

[18] *Curtis v. Sec. Bank of Wash.*, 69 Wn. App. 12, 20, 847 P.2d 507 (1993).

[19] *Mahler*, 135 Wn.2d at 429 (citing *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 33, 442 P.2d 621 (1968)).

[20] *Colonial Imports v. Carlton N.W., Inc.*, 83 Wn. App. 229, 242, 921 P.2d 575 (1996) (quoting 5 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 1046, at 281 n.69 (1964) (quoting *Laycock v. Parker*, 103 Wis. 161, 186, 79 N.W. 327 (1899))). *See also Prier*, 74 Wn.2d at 34.

against the prejudgment interest rate provided by statute, it should have paid the amount owed into the registry of the court. By doing so, prejudgment interest would have been tolled on the amount deposited. BD wanted a release, but the release it sought would have compromised Crest's rights in the underlying action. Under the facts we cannot hold that the trial court abused its discretion by awarding prejudgment interest.

¶36 Both parties seek attorney fees on appeal. BD is entitled to attorney fees on appeal upon compliance with the provisions of RAP 18.1.

¶37 The decision of the trial court is affirmed in part and reversed in part and remanded to the trial court for a proper determination of attorney fees.

BAKER and SCHINDLER, JJ., concur.

Reconsideration denied September 22, 2005.