IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

DAVIS WRIGHT TREMAINE LLP, a
limited liability partnership,

          Respondent,

          v.

FREDERICK PETERSON,

          Appellant.

No. 75014-3-I

UNPUBLISHED OPINION

FILED: May 1, 2017

SCHINDLER, J. — Davis Wright Tremaine LLP (DWT) filed a lawsuit for unpaid legal fees against Frederick Peterson. Following a bench trial, the court ruled Peterson breached the legal services agreement. The court found the majority of the fees were reasonable, entered a judgment in favor of DWT, and awarded DWT attorney fees as the prevailing party. Peterson appeals the judgment and the award of attorney fees to DWT as the prevailing party. We affirm.

Meilinger Lawsuit

Frederick Peterson is the president of Retaining Walls Northwest Inc. (RWNW). In July 2010, Trent Meilinger, Larry Westling, and Tower and Cabling Services Inc. filed a lawsuit against Peterson and Patrick McHugh (the Meilinger lawsuit). The complaint

alleged Peterson breached the agreement "to provide financing of up to $2,000,000" to Tower and Cabling Services. The lawsuit sought damages and attorney fees.

Peterson discussed the Meilinger lawsuit with his longtime friend Gregory Hendershott. Hendershott is a partner at Davis Wright Tremaine LLP (DWT). Peterson asked DWT to represent him in the Meilinger lawsuit.

On October 14, 2010, DWT sent Peterson an "Engagement Letter" and the "Standard Terms of Engagement for Legal Services" (Legal Services Agreement). The letter states DWT would bill Peterson monthly for legal fees based on a number of factors including the "time and effort required"; the "novelty and complexity of the issues presented"; the "amount of money or value of property involved and the results obtained"; and the "experience, reputation and expertise of the lawyers performing the services." The Engagement Letter states, in pertinent part:

### Engagement

At Davis Wright Tremaine LLP we believe it is essential that our clients and we have the same understanding of the client-attorney relationship. With this in mind, attached for your review is a copy of our Standard Terms of Engagement for Legal Services, which describes in greater detail the basis on which we provide legal services to our clients.

As with most firms, fees for services at Davis Wright are based on a variety of factors including, for example, the time and effort involved, the experience of those doing the work, and the complexity of the matter. Of these and other considerations, the time devoted and the experience of those providing the services will be given the most weight. For example, John Theiss's present rate is $435.00 per hour. Rates are subject to adjustment from time to time. Depending on circumstances that may arise, other Davis Wright attorneys or paralegals may assist at rates consistent with their skills and experience. John will advise you before any attorney besides John does substantial work on this matter. Our services are billed monthly. Please let me know if you ever have a question or concern on a bill.

2

The Legal Services Agreement states the client agrees to "make payment within 30 days of receiving our statement," pay the expenses of collecting the debt, and pay reasonable attorney fees. The Legal Services Agreement states, in pertinent part:

### Billing Arrangements and Terms of Payment

We will bill you on a regular basis, normally each month, for both fees and disbursements. You agree to make payment within 30 days of receiving our statement. . . .

We will give you prompt notice if your account becomes delinquent, and you agree to bring the account or the retainer deposit current. If the delinquency continues and you do not arrange satisfactory payment terms, you agree that we may withdraw from the representation and pursue collection of your account. You agree to pay the expenses of collecting the debt, including court costs, filing fees and a reasonable attorney's fee.

DWT partner John Theiss and associate Carly Summers represented Peterson. Peterson told the attorneys to "act aggressively in the Meilinger Lawsuit." DWT investigated a broad range of claims against McHugh, Meilinger, Westling, and the officers of Tower and Cabling Services. DWT filed counterclaims alleging breach of contract, breach of fiduciary duties, securities fraud, fraudulent misrepresentation, conversion, and unjust enrichment. DWT also filed a cross claim against McHugh alleging breach of contract and breach of fiduciary duty and a third-party complaint against the officers of Tower and Cabling Services.

Between October 2010 and September 2012, DWT "engaged in considerable litigation." From October 2010 through September 2012, DWT billed Peterson $122,415.90—$119,779.00 for professional services and $2,636.90 for costs and other expenses. Theiss billed 44.7 hours at an hourly rate of $435.00 in 2010 and $475.00 per hour by 2012. Summers billed 338.1 hours at an hourly rate of $250.00 in 2010 and

$290.00 by 2012. Peterson paid DWT $40,817.27. DWT "expended considerable effort in attempting to resolve the unpaid invoices" with Peterson.

In September 2012, DWT withdrew from representing Peterson in the Meilinger lawsuit. Peterson retained another law firm and filed a motion for partial summary judgment.[1] The motion relied on evidence obtained by DWT during discovery. The court granted partial summary judgment in favor of Peterson. The court dismissed the complaint and ruled in Peterson's favor on the counterclaim against Westling. But the court denied summary judgment on the counterclaim against Meilinger. On May 17, 2013, the parties stipulated to dismissal of all claims.

DWT Lawsuit

On January 22, 2014, DWT filed a lawsuit against Peterson for the unpaid legal fees. DWT alleged Peterson incurred $119,779.00 in legal fees and $2,636.90 in costs and other expenses but paid only $40,817.27. DWT sought judgment in the amount of the unpaid balance of $81,630.97.

Peterson asserted a number of affirmative defenses including that DWT charged unreasonable fees in violation of RPC 1.5(a) and that the fee agreement violated the RPCs and is "void as against public policy."

> Plaintiff has breached RPC 1.5(a) by charging an unreasonable fee for its services. Plaintiff cannot collect an unreasonable fee for the services it may have rendered. Plaintiff's fee request must be limited to a reasonable fee and all amounts Plaintiff collected in excess of a reasonable fee must be disgorged to Defendant.
>
> . . . .
> . . . . The cause of action and fee agreement are void as against public policy because they violate the Washington Rules of Professional Conduct.

---

[1] The motion for partial summary judgment did not address Peterson's claims against the officers of Tower and Cabling Services.

4

DWT and Peterson presented testimony during the three-day bench trial.

Theiss and Summers testified at length about the legal services and representation of Peterson in the Meilinger lawsuit. Theiss testified his hourly rates were "fairly similar to [partners] with the same tenure as me" and the hourly rates for Summers were the same as other associates at DWT. Theiss stated DWT billed Peterson at its standard hourly rates and the hourly rates were "generally similar" to the rates charged by other large law firms. Theiss testified the hours billed for Summers were "comparable" to the hours other associates spent on similar lawsuits and "reasonable for the tasks she was asked to do."

At the conclusion of DWT's case, Peterson moved to dismiss. Peterson argued DWT did not present evidence to show the legal fees incurred were reasonable. DWT argued the witnesses testified about the work performed and "the need for the work that was performed because of [the] complexity of the case." The court denied the motion to dismiss.

Peterson called attorney David Nold as an expert witness on the reasonableness of the legal fees. Nold testified the fees were "grossly unreasonable." According to Nold, DWT billed "approximately 90 percent" of the hours for the work of an associate and he had "never seen an associate with . . . one year of experience to whom this amount of responsibility should have been given." In his opinion, 36 hours for Theiss and 93 hours for Summers was reasonable. Nold testified a reasonable fee for the work DWT performed on the Meilinger lawsuit was $40,455.

The trial court entered extensive findings of fact and conclusions of law. The court found Peterson breached the Legal Services Agreement. The court found DWT

billed Peterson $119,779.00 in fees and $2,636.90 in costs for the Mellinger lawsuit. The court found Theiss's testimony "credible on hourly rates being reasonable generally for himself and Ms. Summers." The court concluded the hours billed were "reasonable in part." The court found Theiss "spent a reasonable number of hours working on Peterson's case." However, the court concluded the "hours spent on the matter by the associate were too high." The court reduced the hours billed for Summers by one-third from 338.1 to 225.5 for "some duplication (conferences with Mr. Theiss) and considerable hours wasted because of inexperience, unproductive claims, or lack of client management."

Using an average hourly rate of $455.00 for the 44.7 hours of work performed by Theiss, the court found a reasonable fee was $20,338.50. Using an average hourly rate of $270.00 for Summers, the court concluded a reasonable fee for her work was $60,885.00. The court concluded the total reasonable legal fees and costs for the Meilinger lawsuit was $83,860.40—$81,223.50 in attorney fees and $2,636.90 in costs. After subtracting the $40,817.27 that Peterson had paid, the court awarded DWT $43,043.13. The court found DWT was "the prevailing party under the Billing Arrangements and Terms of Payments section of the Engagement Agreement and [Legal Services Agreement] and is entitled to recover its attorneys' fees and costs" incurred in the breach of contract lawsuit.

DWT filed a motion for an award of $130,285.74 in attorney fees and costs as the prevailing party. Peterson argued DWT was not entitled to an award of attorney fees and costs as the prevailing party because he proved the fees were unreasonable. Peterson also claimed that because the court reduced the hours billed, DWT violated

6

RPC 1.5(a). In the alternative, Peterson argued the attorney fees DWT sought as the prevailing party were unreasonable and should be reduced. The court awarded DWT $90,000.00 in attorney fees and costs as the prevailing party.

Breach of the Legal Services Agreement

On appeal, Peterson contends substantial evidence does not support the finding that he breached the Legal Services Agreement. We review the trial court decision to determine whether substantial evidence supports the findings of fact and whether those findings, in turn, support the conclusions of law. Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Substantial evidence is the quantum of evidence "sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

We will not "disturb findings of fact supported by substantial evidence even if there is conflicting evidence." Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We treat findings of fact labeled as conclusions of law as findings of fact. Riley-Hordyk v. Bethel Sch. Dist., 187 Wn. App. 748, 759 n.11, 350 P.3d 681 (2015); Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). We defer to the trial judge on issues of witness credibility and persuasiveness of the evidence. Boeing Co. v. Heidy, 147 Wn.2d 78, 87, 51 P.3d 793 (2002); City of Univ. Place v. McGuire, 144 Wn.2d 640, 652, 30 P.3d 453 (2001). "Unchallenged conclusions of law become the law of the case." Rush v. Blackburn, 190 Wn. App. 945, 956, 361 P.3d 217 (2015); King Aircraft Sales, Inc. v. Lane, 68 Wn. App. 706, 716-17, 846 P.2d 550 (1993).

The trial court entered extensive findings of fact and conclusions of law. Peterson challenges only one finding. Peterson argues substantial evidence does not

7

support the finding that "[i]n October 2010, Mr. Peterson requested that DWT represent him in his defense of the Meilinger Lawsuit." Substantial evidence supports the finding. The first invoice from DWT is dated October 5, 2010. DWT filed a notice of appearance on behalf of Peterson in the Meilinger lawsuit on October 8, 2010. The other unchallenged findings of fact are verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

The unchallenged findings support the conclusion that Peterson breached the terms of the Engagement Letter and Legal Services Agreement. The unchallenged findings establish the "terms of DWT's engagement were communicated to Mr. Peterson" and DWT sent Peterson its Legal Services Agreement that "explained how fees DWT charged would be set." Under the "Engagement Agreement" and the Legal Services Agreement, Peterson "was to pay DWT at its normal hourly rates for legal services performed by DWT's attorneys and reimburse DWT for out-of-pocket costs incurred in connection with the Meilinger Lawsuit" within 30 days of receiving a statement. Although Peterson did not sign the Engagement Agreement, the court concluded Peterson "contracted with DWT for legal services under the terms of the Engagement Agreement and the enclosed [Legal Services Agreement]."

> Here, as in [Bakke v. Columbia Valley Lumber Co., 49 Wn.2d 165, 169, 298 P.2d 849 (1956)], DWT gave Mr. Peterson and RWNW a letter describing the terms DWT imposed for representing Mr. Peterson in the Meilinger Lawsuit. He/it did not contest any of the terms, and Mr. Peterson agreed to DWT representing him after having received the [Legal Services Agreement]. He/it knew DWT was performing extensive services for him/it after having received the Engagement Letter, and Mr. Peterson on behalf of RWNW also initially compensated DWT in accordance with the Engagement Letter and [Legal Services Agreement]. Thus, Mr. Peterson contracted with DWT for legal services under the terms of the Engagement Agreement and the enclosed [Legal Services Agreement].

The court concluded the contract was "fair" and the Engagement Letter and Legal Services Agreement "provided full and fair disclosure of the contract's terms."

> DWT's contract with Mr. Peterson, including the Engagement Letter and [Legal Services Agreement], was fair, DWT exerted no undue influence on Mr. Peterson to cause him to enter into or continue to perform under the contract, and the Engagement Letter and [Legal Services Agreement] provided full and fair disclosure of the contract's terms.

The unchallenged findings establish "DWT rendered legal services to Mr. Peterson in connection with the Meilinger Lawsuit" between October 2010 and September 2012 totaling $122,415.90 but Peterson paid only $40,817.27. We conclude the unchallenged findings support the trial court's conclusion that Peterson breached the Legal Services Agreement.

Motion To Dismiss

Peterson argues the court erred in denying his motion to dismiss at the conclusion of the evidence presented by DWT. Peterson asserts DWT presented no evidence that the legal fees DWT incurred were reasonable. Under CR 41(b)(3), dismissal is appropriate only " 'if there is no evidence, or reasonable inferences therefrom, that would support a verdict for the plaintiff.' " Commonwealth Real Estate Servs. v. Padilla, 149 Wn. App. 757, 762, 205 P.3d 937 (2009) (quoting Willis v. Simpson Inv. Co., 79 Wn. App. 405, 410, 902 P.2d 1263 (1995)); Brant v. Mkt. Basket Stores, Inc., 72 Wn.2d 446, 447, 433 P.2d 863 (1967). We review a trial court's decision on a motion to dismiss for manifest abuse of discretion. Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wn. App. 183, 190, 69 P.3d 895 (2003); Johnson v. Horizon Fisheries, LLC, 148 Wn. App. 628, 636, 201 P.3d 346 (2009). "A trial court abuses its discretion only if its decision is manifestly unreasonable or based on

untenable grounds." <u>Cent. Puget Sound Reg'l Transit Auth. v. Airport Inv. Co.</u>, 186 Wn.2d 336, 350, 376 P.3d 372 (2016).

In an action filed by an attorney to collect legal fees, the burden is on the attorney "to prove by a preponderance of the evidence both the services rendered and the reasonable value thereof." <u>Dailey v. Testone</u>, 72 Wn.2d 662, 664, 435 P.2d 24 (1967). An attorney must present " 'reasonable documentation of the work performed.' " <u>Scott Fetzer Co., Kirby Co. Div. v. Weeks</u>, 122 Wn.2d 141, 151, 917 P.2d 1086 (1993) (quoting <u>Bowers v. Transamerica Title Ins. Co.</u>, 100 Wn.2d 581, 597, 675 P.2d 193 (1983)).

Here, DWT introduced into evidence invoices documenting the legal services performed for Peterson between 2010 and 2012. Theiss and Summers used the invoices to testify at length about the legal services DWT provided while representing Peterson. The evidence presented at trial established the legal services DWT provided to Peterson included (1) "[r]esearching, drafting, and filing cross-claims, counterclaims, and a third-party complaint"; (2) engaging in extensive discovery including interrogatories, document production, depositions, and motions to compel; (3) engaging in mediation; and (4) "engaging in numerous settlement discussions with the plaintiffs, cross-claim defendant, and third-party defendants." Theiss also testified about the reasonableness of the hourly rates DWT billed. The court did not abuse its discretion in denying the motion to dismiss under CR 41(b)(3).

Prevailing Party Attorney Fees

Peterson asserts the court erred in awarding attorney fees to DWT as the prevailing party. Peterson claims he is the prevailing party because the court reduced

the amount of attorney fees awarded to DWT.

A "prevailing party" is "the party in whose favor final judgment is rendered." RCW 4.84.330; see also Schmidt v. Cornerstone Invs., Inc., 115 Wn.2d 148, 164, 795 P.2d 1143 (1990) ("a prevailing party is generally one who receives a judgment in its favor"); Emerick v. Cardiac Study Ctr., Inc., 189 Wn. App. 711, 732, 357 P.3d 696 (2015) ("In general, a prevailing party is one who receives an affirmative judgment in his or her favor.").

After reducing the amount billed for the associate by one-third, the court found DWT was entitled to $83,860.40 as reasonable attorney fees and costs for the work performed. The court deducted the amount Peterson had previously paid and entered a judgment in favor of DWT for $43,043.13. The court did not err in concluding DWT was the prevailing party.

RPC 1.5(a)

Peterson asserts the DWT Legal Services Agreement is void and unenforceable under RPC 1.5(a). DWT argues Peterson waived his right to raise this argument for the first time on appeal

In answer to the complaint, Peterson asserted as an affirmative defense that "by charging an unreasonable fee," DWT violated RPC 1.5(a), and that the Legal Services Agreement was void because it violated RPC 1.5(a). The party asserting an affirmative defense has the burden of proving that defense at trial. Camicia v. Howard S. Wright Const. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014); Schmidt v. Coogan, 181 Wn.2d 661, 665, 335 P.3d 424 (2014); Cregan v. Fourth Mem'l Church, 175 Wn.2d 279, 283,

No. 75014-3-I/12

285 P.3d 860 (2012); <u>Steele v. Organon, Inc.</u>, 43 Wn. App. 230, 239, 716 P.2d 920 (1986).

At trial, Peterson presented evidence on whether the fees were reasonable. But at the presentation hearing on entry of the findings of fact and conclusions of law, Peterson argued the Legal Services Agreement violates RPC 1.5(a) and is void.

On appeal, Peterson claims that as a matter of law, the Legal Services Agreement violates RCP 1.5(a). Peterson asserts the agreement places an undue emphasis on "the time and effort required" rather than "equally weigh[ing]" the factors set forth in RPC 1.5(a).

RPC 1.5(a) states:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent; and
(9) the terms of the fee agreement between the lawyer and the client, including whether the fee agreement or confirming writing demonstrates that the client had received a reasonable and fair disclosure of material elements of the fee agreement and of the lawyer's billing practices.

12

Peterson cites no authority that the factors in RPC 1.5(a) must be given equal weight. Because the RPC 1.5 factors "are not exclusive. Nor will each factor be relevant in each instance," we conclude the Legal Services Agreement did not violate RPC 1.5(a). RPC 1.5 cmt. 1.[2]

In the alternative, Peterson claims the award of attorney fees to DWT as the prevailing party violates public policy. The unchallenged findings establish the terms of the Legal Services Agreement control. The Legal Services Agreement states Peterson agrees to pay reasonable attorney fees incurred in collecting unpaid legal fees. "Where a contract provides for such fees, RCW 4.84.330 requires that the court award them to the prevailing party." Riss v. Angel, 80 Wn. App. 553, 563-64, 912 P.2d 1028 (1996).[3] Because the award of attorney fees and costs is mandatory and the court does not have "discretion except as to the amount," Peterson's public policy argument fails. Nw. Cascade, Inc. v. Unique Constr., Inc., 187 Wn. App. 685, 704, 351 P.3d 172 (2015); Crest Inc. v. Costco Wholesale Corp., 128 Wn. App. 760, 772, 115 P.3d 349 (2005); Kofmehl v. Steelman, 80 Wn. App. 279, 286, 908 P.2d 391 (1996).

---

[2] For the first time on appeal, Peterson also argues the Legal Services Agreement is unenforceable because DWT violated the implied covenant of good faith and fair dealing. We decline to consider an argument raised for the first time on appeal. RAP 2.5(a); Herberg v. Swartz, 89 Wn.2d 916, 925, 578 P.2d 17 (1978).

[3] (Emphasis added.) RCW 4.84.330 states, in pertinent part:

In any action on a contract . . . where such contract . . . specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract . . . , shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract . . . or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

(Emphasis added.)

We affirm the judgment against Peterson and the award of attorney fees to DWT as the prevailing party.[4]

WE CONCUR:

_Schindler, J_

_Trickey, ACJ_                    _Cox, J._

---

[4] DWT requests attorney fees on appeal under RAP 18.1. Because DWT is entitled to attorney fees and costs incurred to enforce the contract, we award DWT reasonable attorney fees on appeal upon compliance with RAP 18.1.