[No. 17062-1-II. Division Two. September 26, 1995.]

TROY R. WILLIS, *Appellant*, v. SIMPSON INVESTMENT COMPANY, ET AL., *Respondents*.

*H. Frank Stubbs* and *H. Frank Stubbs, Inc., P.S.*, for appellant.

*Richard P. Lentini* and *Ryan, Swanson & Cleveland,* for respondents.

SEINFELD, C.J. — Troy R. Willis sought an increase in his permanent partial disability workers' compensation benefits or an award of permanent total disability benefits. The trial court dismissed Willis's claim at the close of his case-in-chief. We conclude that Willis's evidence that he was not employable at the time the Department of Labor and Industries closed his claim and his evidence that his impairment was more serious than earlier determined by the Department was sufficient to establish a prima facie case. Thus, we reverse and remand for trial.

### FACTS

Simpson Investment Company had employed Willis in a variety of capacities for about eight years when, in February 1980, Willis injured his back while working as a boiler tender. Willis filed a claim for workers' compensation benefits with the Department of Labor and Industries.

In May 1984, the Department awarded Willis permanent partial disability benefits based on what the Department found to be a category four impairment under WAC 296-20-280. Pursuant to former RCW 51.32.080(2), *repealed by* Laws 1988, ch. 161, § 6, the Department reduced Willis's award to seventy-five percent of the maximum because of the lack of marked objective findings.

Willis's condition worsened and, at his request, the Department reopened the claim in November 1984 pursuant to RCW 51.32.160. In his second claim to the Department, Willis sought benefits for a mental health condition that he claimed was causally related to his injury at Simpson. Willis also sought benefits for permanent total disability or, in the alternative, for an increase in his perma-

nent partial disability payments. In March 1990, the Department denied Willis's claim for additional benefits.

Willis appealed the Department's denial of his claims to the Board of Industrial Insurance Appeals and testified at the Board hearing. He also presented the testimony of Dr. Jeffrey Nacht, Dr. Myron Kass, and Anthony Choppa, a certified rehabilitation counselor.

Willis testified that he had worked with his hands for his entire life and at Simpson had done mostly heavy labor; that as of March 1990 he still had muscle spasms and cramps in his back, legs, and feet; and that he did not think there were any jobs that he could do on a reasonably continuous basis because many days he could not even get out of bed to go to the bathroom.

As background to his extensive testimony about Willis's condition, Dr. Nacht explained that he had been Willis's attending physician for the last four years that Willis's claim had been open with the Department and that he was familiar with Willis's medical history. In the years before he first saw Dr. Nacht, Willis's lower back treatment included enzyme injections to relieve pressure caused by ruptured disc material and two open back surgeries, the first to remove ruptured disc material and the second to fuse Willis's L4 and L5 vertebrae.

Dr. Nacht had performed a third open back surgery to create stability in Willis's lower back because the previous fusion had not been successful. In this procedure, Dr. Nacht installed two four-inch, stainless steel steffi plates in Willis's lower back.

Dr. Nacht diagnosed Willis's condition as degenerative lumbar disc disease, lumbar radiculitis, nerve root radiculitis, and post-laminectomy syndrome. He testified that Willis's diagnoses were directly related to his employment at Simpson and were permanent.

When asked to select the permanent partial disability gradation in WAC 296-20-280 that best described Willis's disability as of 1990, the closing date of Willis's claim, Dr. Nacht identified category six. Although Dr. Nacht could

not pinpoint weakness or atrophy in a specific muscle group, he justified his opinion as follows:

> Mr. Willis has very significant impairment of his lumbar function with limited ra[n]ge of motion and inability to use his back for normal activities of daily living as I have outlined before. He also has objective clinical findings, such as limited motion, loss of deep tendon reflexes and some weakness in his legs which I thought were symmetric and generalized but were significant. In addition he had some marked x-ray changes consistent with degenerative disc disease at the L4-5 level, hypertrophic spurring, the steffi plates and fusion mass in place and continued symptoms associated with those degenerative changes.

Dr. Nacht placed the following limitations on Willis's activities:

> I think that Mr. Willis could handle sitting for up to an hour at a time. Standing for up to two hours at a time. Walking for up to 30 minutes at a time without a break. That he could handle occasional bending and occasional lifting. And that his lifting and carrying limits should be restricted to 20 pounds or less. And he should not be required to climb stairs frequently, although he could climb an occasional single flight of stairs or descend two flights of stairs. . . .

Dr. Nacht ruled out work that Willis had regularly done in the past. However, Dr. Nacht did believe that Willis was capable of doing a number of jobs.

Anthony Choppa described his vocational evaluation of Willis. Choppa testified that at the time he saw Willis, Willis probably was not employable, and that Willis could not perform any of the jobs he had previously performed. However, he believed that with some retraining Willis would be employable.

Finally, Dr. Kass testified about Willis's mental impairment. This evidence is not at issue on appeal.

In April 1992, the Board affirmed the Department's denial of Willis's claim of permanent total or increased permanent partial disability. The Board did award Willis additional benefits based on his mental impairment.

Willis appealed the Board's ruling to Mason County Superior Court, presenting the record he had made before the Board to a jury. At the close of Willis's case-in-chief, Simpson moved for an order of dismissal pursuant to CR 41(b)(3). The trial court granted the motion, concluding that Willis had not established a prima facie case of permanent total disability or of increased permanent partial disability.

Willis appeals, arguing that his proof was sufficient to overcome a CR 41(b)(3) motion to dismiss.

## I

■ Preliminarily we note that CR 41(b)(3) governs dismissals in bench trials. *See* CR 41(b)(3). As Willis's case was before a jury, the proper civil rule was CR 50(a)(1), which governs motions for judgment as a matter of law in actions tried before a jury. As the standard for dismissal is the same under both rules, we perform the same analysis on review as the trial court performed below. Dismissal is proper if there is no evidence, or reasonable inferences therefrom, that would support a verdict for the plaintiff. *Baldwin v. City of Seattle*, 55 Wn. App. 241, 247, 776 P.2d 1377 (1989).

## II

In support of his claim of an increase in permanent partial disability to category five or six, as set forth in WAC 296-20-280, Willis points to Dr. Nacht's classification of his disability as a category six. Simpson contends this evidence is insufficient because the descriptions of categories five and six include weakness and atrophy of a specific muscle group, and Dr. Nacht did not find these impairments. *See* WAC 296-20-280(4) and (5).

WAC 296-20-220 provides special rules for evaluation of permanent bodily impairment. WAC 296-20-220(1)(f) provides as follows:

The method of evaluating impairment levels is by selection

of the appropriate level of impairment. These descriptive levels are called "categories." Assessments of the level of impairment are to be made by comparing the condition of the injured workman with the conditions described in the categories and selecting the most appropriate category.

And WAC 296-20-220(1)(g) provides:

The examining physician shall select the one category which most accurately indicates the overall degree of permanent impairment unless otherwise instructed. Where there is language in more than one category which may appear applicable, the category which most accurately reflects the overall impairment shall be selected.

 In construing regulations, we apply standard rules of statutory construction. One of those rules is that all of the provisions of an act must be considered in relation to one another and if possible harmonized to insure the proper construction of each. *State ex rel. Royal v. Board of Yakima County Comm'rs*, 123 Wn.2d 451, 459, 869 P.2d 56 (1994). Therefore, the requirements in categories five and six must be considered in light of WAC 296-20-220(1)(g), which allows an examining physician to select the category that most accurately describes the overall degree of impairment. *See Vliet v. Department of Labor & Indus.*, 30 Wn. App. 709, 711, 638 P.2d 112 (1981), *review denied*, 97 Wn.2d 1002 (1982). Thus, it is not necessary that an individual satisfy all of the criteria of a particular category in order to be included in that category. Dr. Nacht's testimony that Willis suffered a category six impairment was sufficient to create a jury question as to the degree of Willis's impairment. Accordingly, we reverse the trial court and remand for trial on the issue of whether Willis is entitled to an increase in his permanent partial disability award.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and HOUGHTON, JJ., concur.