# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ZOYA SPENCER, a single woman, | ) | NO. 69428-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROBERT LUTON and KARIN | ) | |
| LUTON, as individuals and as the | ) | |
| marital community comprised thereof, | ) | |
| | ) | |
| Respondents. | ) | FILED: March 17, 2014 |
| | ) | |

LEACH, C.J. — Zoya Spencer appeals the trial court's dismissal of her trespass and nuisance claims against her neighbors Karin and Robert Luton. She challenges the court's findings of fact and conclusions of law, the dismissal of her intentional trespass claim at the close of her case, and the denial of her motion for reconsideration. Because substantial evidence supports the trial court's findings of fact, which support its conclusions of law, Spencer did not present evidence sufficient to support an intentional trespass claim, and the trial court did not abuse its discretion in denying Spencer's motion for reconsideration, we affirm.

## FACTS

The rockery at issue runs the length of the backyard boundary dividing two lots of unequal elevation. It is approximately 55 feet long, varies in height from 3 1/2 to 5 feet, and is likely at least 30 years old. It is composed of basalt rocks of

varying size,[1] stacked on and around each other. It was built as an erosion control rockery, not a structural retaining wall.

Zoya Spencer purchased her property in 1987 or 1988 but did not live on the property after 1996. In 2005, Karin and Robert Luton bought their property, which sits higher than the Spencer property. The rockery runs between their backyards, on a sloped area of the Lutons' property.

In 1998, Eric Robison, who previously owned the Lutons' property, embarked on a large landscaping project. This included leveling the backyard and installing a fence.[2] He constructed a graduated retaining wall of railroad ties approximately 18 to 30 inches away from the rockery, backfilling the wall with soil. After receiving complaints from James Costello, Spencer's tenant, Robison commissioned a survey, which determined that the rockery was on Robison's property. Spencer or Costello asserted in an e-mail or letter in 1998 that the rockery was unstable, and erosion was increasing due to Robison's alterations. The neighbors had no further contact until the spring of 2005, after Robison listed his house for sale. At that time, Spencer and Costello sent Robison another letter, stating the same concerns. In May 2005, Karin and Robert Luton purchased Robison's property.

---

[1] "One- to two-man" rocks, i.e., 58 to 210 pounds and 265 to 580 pounds.
[2] The height differential between the south end and the north end of the backyard was measured in 1998 as four feet.

In 2007, Spencer demolished the house on her property, replacing it with a new, taller one she intended to sell. As part of the new construction, she excavated some earth near the foot of the rockery. Spencer listed the house for sale in 2009.

In August or September of 2009, shortly after the Lutons listed their own house for sale, Costello sent the Lutons a letter raising concerns about the rockery, and Costello and Robert Luton had a brief phone conversation. They had no follow-up communication. In December 2009, Spencer hired Bradley Biggerstaff, a geotechnical consultant. He reported displaced and fallen rocks and voids in the rockery and recommended that the rockery "be repaired or replaced as soon as possible to prevent damage to the adjacent property or possibly injury to the residents there."

On February 2, 2010, Spencer filed suit against the Lutons, claiming trespass and nuisance. The Lutons hired geotechnical consultant Jamey Battermann, who concluded that the rockery was in "good condition" and "structurally sound" but that the toe support at one end had been removed by the grading on the Spencer property during construction. Because removal of this support could over time "potentially lead[] to a destabilization of the rockery," Battermann recommended repair of the toe support and confirmed this repair about two weeks after its completion in July 2010. In May 2011, he concluded

that the rockery was "providing long term erosion protection for [the] slope behind it" and that he did not have concerns that it would migrate onto the Spencer property. Biggerstaff observed in November 2011 that "the condition of the rock wall hadn't changed significantly" since his December 2009 visit.

After the Lutons completed the repair, Costello filed a complaint with the city of Seattle, which issued a notice of violation to the Lutons for repairing the rockery without a permit. The Lutons applied for a permit, which the city issued. An inspector from the Seattle Department of Planning and Development (DPD) inspected the rockery for purposes of a "simple repair" on February 17, 2011, and reported that the rockery passed his final inspection.

On December 2, 2011, the case went to arbitration. The arbitrator found for the Lutons on the trespass claim and for Spencer on the nuisance claim, awarding her damages of $1,200. Spencer requested a trial de novo.

At a bench trial, the court dismissed Spencer's intentional trespass claims at the conclusion of her case, allowing her negligent trespass and nuisance claims to go forward. On September 10, 2012, the court entered findings of fact and conclusions of law, dismissing with prejudice all of Spencer's claims. The trial court denied Spencer's motion for reconsideration and entered a judgment for the Lutons of $14,081.25 in costs and reasonable attorney fees.

Spencer appeals.

STANDARD OF REVIEW

This court reviews a trial court's findings and conclusions by determining if substantial evidence supports the trial court's findings of fact and if those findings support the trial court's conclusions of law.[3] Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted.[4] We treat unchallenged findings of fact as verities on appeal.[5] We review conclusions of law de novo[6] and a trial court's denial of a motion for reconsideration for abuse of discretion.[7] A court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons.[8] Where a trial court dismisses claims after the plaintiff rests under CR 41(b)(3), dismissal is proper "'if there is no evidence, or reasonable inferences therefrom, that would support a verdict for the plaintiff.'"[9]

ANALYSIS

In her complaint, Spencer alleged common law trespass "caused negligently or intentionally" by the Lutons' rockery, as well as common law and

---

[3] State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001).
[4] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).
[5] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).
[6] State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).
[7] Brinnon Grp. v. Jefferson County, 159 Wn. App. 446, 485, 245 P.3d 789 (2011) (citing Lilly v. Lynch, 88 Wn. App. 306, 321, 945 P.2d 727 (1997)).
[8] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).
[9] Stieneke v. Russi, 145 Wn. App. 544, 568 n.5, 190 P.3d 60 (2008) (quoting Willis v. Simpson Inv. Co., 79 Wn. App. 405, 410, 902 P.2d 1263 (1995)).

statutory nuisance. She contends that the trial court should not have dismissed her intentional trespass claim after she completed her case because a trial stipulation supports this claim. She also assigns error to 13 of the trial court's 17 findings of fact and challenges all the trial court's conclusions of law except the jurisdictional one.

### Dismissal at Close of Spencer's Case under CR 41(b)(3)[10]

Spencer contends that the trial court should not have dismissed her claims for intentional trespass after she completed her case.[11] The Lutons first respond that Spencer did not preserve this issue for review because she did not specifically designate the trial court's CR 41(b)(3) order in her motion for reconsideration or her notice of appeal.

Generally, before an appellate court will review a trial court's order, an appellant must seek review of that order.[12] However, in her motion for

_____

[10] CR 41(b)(3) provides,
> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

[11] The trial court dismissed both common law and statutory claims for intentional trespass.

[12] See Ortblad v. State, 88 Wn.2d 380, 385, 561 P.2d 201 (1977) (holding that where respondents failed to seek review of trial court's denial of damages and costs in mandamus action, issue was not before the reviewing court);

reconsideration, Spencer requested reconsideration of the trial court's findings and conclusions "on all of the issues presented at trial." Moreover, the trial court found that "[a]t no time did the Lutons act intentionally by trespassing onto the Spencer property." The Rules of Appellate Procedure "will be liberally interpreted to promote justice and facilitate the decision of cases on the merits."[13] Here, although Spencer did not specifically designate the trial court's CR 41(b)(3) order, her appeal of the findings of fact encompassed the trial court's finding that the Lutons did not intentionally trespass on her property. This adequately preserved the issue for review.

In its order, the court dismissed Spencer's damage claims under RCW 4.24.630[14] as not alleged in her complaint. In also dismissing her common law trespass claim, the court explained, "In this case there is no evidence, even in the light most favorable to Ms. Spencer . . . that [the Lutons] acted intentionally.

---

Wagner v. Beech Aircraft Corp., 37 Wn. App. 203, 212-13, 680 P.2d 425 (1984) (holding that failing to cross appeal trial court's decision about setoff precluded respondent from seeking review of that decision); RAP 2.4(a).

[13] RAP 1.2(a).

[14] RCW 4.24.630 states that a person who
wrongfully causes waste or injury to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. . . . [A] person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act.

There's no evidence that they acted, period. And even under Bradley[15] you need to have an act." Costello confirmed during cross-examination that he never saw Robert or Karin Luton on the Spencer property and never saw them remove or damage anything.

In Bradley v. American Smelting & Refining Co., the Washington Supreme Court articulated a four-part test for trespass that includes "an intentional act" but also noted that intent is not limited to consequences the actor desired to bring about.[16] "'If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.'"[17]

Here, the Lutons committed no "act" from which consequences were "substantially certain[] to result." Spencer attributes to Robison the requisite act, the placement of the railroad ties. She argues that the Lutons have liability as successor owners. However, Spencer failed to present evidence that Robison's retaining wall caused a continuing trespass for which the Lutons would be liable. Therefore, the trial court properly granted the Lutons' CR 41(b)(3) motion to dismiss this claim when Spencer completed her case.

---

[15] 104 Wn.2d 677, 709 P.2d 782 (1985).
[16] Bradley, 104 Wn.2d at 692-93.
[17] Bradley, 104 Wn.2d at 682 (quoting RESTATEMENT (SECOND) OF TORTS § 158 cmt. b (1965)).

### No Stipulation that Rockery Took 220 Feet of Spencer's Property

Spencer argues that the parties stipulated, "[T]he rockery has taken 220 feet of Spencer's property" and that this supports her trespass claim. She bases this contention on a court reporter's transcription error. The reporter transcribed a statement from Spencer's counsel as "Mr. Schwanz and myself, in agreement with my client, they'll stipulate to the value of 220 feet were taken from my client's property." The trial court later entered an order amending the verbatim report of proceedings to "they'll stipulate to the value if 220 feet were taken from my client's property." Thus, if Spencer decided to construct a retaining wall on her property because of concerns about the rockery, she would lose 220 square feet of land. The trial court noted in its order the parties' stipulation that "the value of this loss [from a retaining wall on Spencer's property] would be $1568.00." The parties conditionally stipulated to the value of such a loss but did not stipulate that a loss occurred. Because Spencer did not demonstrate at trial that she lost this area of land, her claim fails.

### Findings of Fact

Spencer disputes the trial court's finding that "[c]ompetent evidence established that the rockery is situated upon the Luton property." She contends that a 1998 survey shows a trespass because the rockery "crossed over slightly onto Spencer's property at the center and at the south end of the rockery."

Robison testified, however, that the survey demonstrated his property extended 12 inches beyond the rockery in some places.

Spencer also challenges the court's finding that "the rockery is in reasonably good condition and shows no evidence of past lateral or rotational movement." She argues that portions of the rockery continue to slide onto her property. Battermann, the Lutons' geotechnical expert, testified that the rockery was in "very good condition" and "structurally sound." When he visited the Luton property in January 2010, he saw no evidence of collapse, hydrostatic pressure, overturning,[18] or lateral movement. Spencer's geotechnical expert, Biggerstaff, testified that the rockery needed to be repaired or replaced because of cracked, "melting," and dislodged rocks, but also stated that nearly two years after his first visit to Spencer's property, "the condition of the rock wall hadn't changed significantly." On cross-examination, Biggerstaff confirmed that other than "silt that had gone maybe 1 to 2 feet on to the Spencer property" and one or two rocks, he documented no damage from the rockery. Substantial evidence supports the trial court's findings that the rockery is stable and in reasonably good condition.

---

[18] Overturning occurs when soils behind the rocks begin to exert pressure that pushes the rocks out and increases the verticality of the rockery until rocks begin to fall from the top.

Spencer also disputes the trial court's finding that the rockery is "an erosion control rockery, rather than a structural retaining wall," and that the placement of railroad ties and additional soil in 1998 "did not add an undue or improper weight or surcharge to the rockery." Battermann stated that the cut slope on which the Luton property sits "appears [to have] been stable for an extended time" and was stable when he examined it during his visit. He observed that the rockery functions as erosion control, not structural support, for the slope. The railroad tie retaining wall and soil, according to Battermann, "adds a surcharge on to the cut slope. It has not affected the stability of the rockery in my opinion." Biggerstaff disagreed, but he acknowledged that in the 14 years since Robison added the railroad timbers and soil, the rockery "still has not completely failed" and that he documented no migration of the rockery during the 2 years between his visits.

Spencer analogizes to Woldson v. Woodhead,[19] where the trial court found that a previous owner's conversion of a rubble masonry wall to a structural retaining wall was "a use not contemplated by its original design" that caused damage to the wall. This damage constituted a continuing trespass for which the court found a successive owner liable.[20]

---

[19] 159 Wn.2d 215, 217, 149 P.3d 361 (2006). The Washington Supreme Court heard the case for the narrower issue of the statute of limitations.
[20] Woldson, 159 Wn.2d at 217-18.

Woldson is distinguishable. In that case, the rubble masonry wall itself became a retaining wall for the fill dirt the previous owners used to raise the level of the property. Subsequent owners then constructed a carport and garage, which exerted unsustainable pressure and caused damage. On the Lutons' property, the railroad ties, not the rockery, compose the retaining wall. The retaining wall and soil add a surcharge to the stable cut slope, not to the rockery. Both geotechnical consultants in this case testified that there is little or no evidence that the rockery is migrating onto Spencer's property. Substantial evidence supports the trial court's findings that the rockery is not a structural retaining wall and that the 1998 alterations did not add an undue surcharge to the rockery.

The trial court found that "part of the toe of the rockery in the northeast corner of the Spencer property was removed during the excavation of the backyard of the new Spencer house" and that this removal "likely weakened the support for the rockery," resulting in dislodged and displaced rocks. Spencer challenges these findings, pointing to her communications with Robison in 1998 and the Lutons in 2005, which predated construction of her new home. Battermann confirmed, however, that the repair of the toe support and restacking of rocks stabilized the rockery.

Spencer further contends, contrary to the trial court's findings, that "[t]he rockery as a whole has never been inspected, permitted, or 'passed by the City of Seattle.'" She emphasizes that the city inspected and passed only the very limited repair of the toe support and two areas where rocks were dislodged.

Seattle DPD manager David Cordaro testified that his department's 2011 inspection was not a structural, code, or engineering review but rather a review of a "simple repair." However, he also confirmed that his inspectors would check "failed," not "passed," if there were concerns with a rockery's stability or structural soundness. He confirmed that a permitted repair that passes when it should have failed subjects the city to potential liability and agreed that inspectors are "instructed to be careful" in their determinations. Because the DPD inspector checked "passed" and "final," substantial evidence supports the trial court's finding that the rockery passed the city's inspection.

Spencer also challenges the trial court's finding of fact 13:

> The Court finds since Ms. Spencer has not lived at the residence since 1996 any issues associated with either rocks falling onto the property . . . or any alleged silting that may have occurred has not interfered with Ms. Spencer's enjoyment or use of the property, or caused her to be insecure in the use of her property.

Spencer contends that this is a mistakenly labeled conclusion of law, "albeit a novel and erroneous one." She argues that the trial court denied her a remedy because she is a landlord who no longer lives on the property.

Landlords may recover damages for nuisance on properties they own but do not occupy. "'Where the injury to land is temporary, the measure of damages is the diminished rental value if the property is to be rented, or the diminished value of its use if the property is to be used by the owner.'"[21] Where the injury to the land caused by the nuisance is "'permanent and irreparable, the measure of damages is the difference in the market value of the property before and after creation of the nuisance.'"[22]

Spencer interprets the trial court's finding too broadly. The trial court found that Spencer has not lived at the residence since 1996, which Spencer does not dispute. The court found that the rockery is stable, not damaging Spencer's property, and not interfering with her use and enjoyment of the property during the occasions she is there. The court did not conclude from this finding that as a nonresident owner, Spencer does not have standing to sue. Spencer's contention has no merit.

---

[21] Miotke v. City of Spokane, 101 Wn.2d 307, 332, 678 P.2d 803 (1984) (quoting Barci v. Intalco Aluminum Corp., 11 Wn. App. 342, 356, 522 P.2d 1159 (1974)), overruled on other grounds by Blue Sky Advocates v. State, 107 Wn.2d 112, 727 P.2d 644 (1986).

[22] Miotke, 101 Wn.2d at 332 (quoting Barci, 11 Wn. App. at 356); see also Vance v. XXXL Dev., LLC, 150 Wn. App. 39, 45, 206 P.3d 679 (2009) ("[O]ne measure of damages for nuisance is the diminution in a property's value due to the nuisance."). Vance involved a lawsuit by an owner who had sold her property by the time of trial; the Court of Appeals held that she had standing to maintain her nuisance claim despite the sale. There was no dispute that a present owner has standing to sue. Vance, 150 Wn. App. at 42.

The trial court found that "as soon as the Lutons were made aware of any issues associated with the rockery they took steps to resolve these issues." The court also found that the Lutons did not "act intentionally by trespassing" and "did not omit to perform any duty owed to Ms. Spencer in regards to the rockery." Spencer assigns error to this finding in its entirety and argues that the latter portion is an erroneous conclusion of law.

Substantial evidence shows that Robert Luton responded to the letter from James Costello in August or September 2009, which was the first time Costello or Spencer raised concerns with him about the rockery. Very shortly after Spencer filed suit in February 2010, the Lutons hired Battermann to evaluate the rockery. In July 2010, the Lutons made the repairs that Battermann suggested. Failing to remove something may also constitute trespass,[23] but the trial court found that by commissioning the repair, the Lutons took steps to remove whatever parts or pieces of the rockery had fallen onto Spencer's property.

Finally, Spencer assigns error to the court's finding that "an occasional rock has fallen from the rockery but that these events have been rare. . . . [A]t the time of trial there was one rock from the rockery that was out of place." Spencer claims that "[e]ight rocks have fallen since Lutons' July 2010 'repair.'"

---

[23] Bradley, 104 Wn.2d at 681-82 (quoting RESTATEMENT (SECOND) OF TORTS § 158(c)).

Biggerstaff testified that in November 2011, he saw at most two displaced rocks. Battermann's and Cordaro's testimony supported a finding that the rockery is stable. The trial court explicitly found Battermann's opinion to be credible. We defer to the trial court's credibility determinations. Substantial evidence supports the trial court's findings.

Conclusions of Law

Spencer also challenges three of the trial court's conclusions of law:

> 2. The Court concludes that the rockery in question is in generally good condition and is structurally sound and therefore concludes as a matter of law it does not constitute a nuisance as defined by RCW 7.48.010 and RCW 7.48.120.

> 2. [sic] The Court concludes as a matter of law the defendants did not breach their duty to the plaintiff to maintain the rockery.

> 3. The Court concludes as a matter of law the plaintiff failed to prove by a preponderance of the evidence (i) negligent trespass on the part of the defendants, or that (ii) the Luton rockery constitutes a nuisance. Therefore the Court finds in favor of the defendants and dismisses this matter against the defendants with prejudice.

A common law trespass claim requires "'an intentional or negligent intrusion onto or into the property of another.'"[24] To prove intentional trespass under the test articulated in Bradley, Spencer must show (1) an invasion of her

---

[24] Pruitt v. Douglas County, 116 Wn. App. 547, 553, 66 P.3d 1111 (2003) (internal quotation marks omitted) (quoting Borden v. City of Olympia, 113 Wn. App. 359, 373, 53 P.3d 1020 (2002)).

interest in the exclusive possession of her property, (2) an intentional act, (3) reasonable foreseeability that the act would disturb Spencer's possession, and (4) actual and substantial damages.[25] Negligent trespass requires proving negligence: duty, breach, causation, and damages.[26] A failure to show actual and substantial damages will result in dismissal of the claim.[27]

RCW 7.48.010 defines an actionable nuisance as "whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property." RCW 7.48.120 further defines nuisance as "unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or . . . in any way renders other persons insecure in life, or in the use of property." In other words, "[a] nuisance is an unreasonable interference with another's use and enjoyment of property."[28] Successive owners who do not abate a continuing nuisance are liable as if they created the nuisance.[29] Anyone who experiences an injurious effect to his property or a loss of personal

---

[25] Bradley, 104 Wn.2d at 692-93.
[26] Pruitt, 116 Wn. App. at 554 (citing Gaines v. Pierce County, 66 Wn. App. 715, 719-20, 834 P.2d 631 (1992)).
[27] Bradley, 104 Wn.2d at 692.
[28] Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 592, 964 P.2d 1173 (1998) (cited in Wallace v. Lewis County, 134 Wn. App. 1, 18, 137 P.3d 101 (2006)).
[29] RCW 7.48.170.

enjoyment due to a nuisance may sue for damages and for injunctive relief to abate the nuisance.[30]

We hold that substantial evidence supports the trial court's findings that the rockery is stable, in good condition, and on the Lutons' property. Substantial evidence likewise supports the finding that rocks fall onto Spencer's property only rarely. Eight rocks at most would not appear to constitute the "injurious" or "indecent or offensive to the senses" conditions described in RCW 7.48.010. We hold that these findings support the court's conclusion that as a matter of law, the rockery does not constitute a nuisance.

The Lutons had a duty of reasonable care to refrain from creating or allowing a nuisance. Substantial evidence supports the court's finding that by repairing the rockery, they performed that duty. This finding supports the court's conclusion that the Lutons did not breach their duty to Spencer to maintain the rockery.

Finally, the trial court concluded that as a matter of law, Spencer failed to prove by a preponderance of the evidence either common law negligent trespass or nuisance. To prove negligent trespass, Spencer must show "actual and substantial damages."[31] Under the circumstances of this case, eight rocks does not suffice. This absence of actual and substantial damages is fatal to Spencer's

---

[30] RCW 7.48.010, .020.
[31] Bradley, 104 Wn.2d at 692-93.

claim.[32] We hold that the trial court did not err in concluding that Spencer failed to prove her claims by a preponderance of the evidence. Likewise, we hold that the trial court did not abuse its discretion in denying Spencer's motion for reconsideration.

Attorney Fees

Spencer and the Lutons both request attorney fees and costs on appeal. Spencer requests fees and costs on the basis of RAP 18.1 and RCW 4.24.630. The Lutons request fees and costs pursuant to RAP 18.1 and MAR 7.3.

Under MAR 7.3, "[t]he court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo."[33] The trial court awarded the Lutons costs and attorney fees for the trial de novo. Under MAR 7.3 and RAP 18.1, we award them their appellate costs and reasonable attorney fees.

CONCLUSION

Substantial evidence supports the trial court's findings of fact, which support its conclusions of law. The trial court did not err by granting the Lutons' motion to dismiss Spencer's intentional trespass claims or by denying Spencer's motion for reconsideration. We therefore affirm and award the Lutons their costs

---

[32] Grundy v. Brack Family Trust, 151 Wn. App. 557, 568, 213 P.3d 619 (2009); see also Wallace, 134 Wn. App. at 14.
[33] RCW 7.06.060 contains the same provision and also includes "reasonably necessary" expenses for expert testimony.

NO. 69428-6-I / 20

and reasonable attorney fees on appeal upon their compliance with applicable court rules.

_Leach, C.J._

WE CONCUR:

_Spearman, J._ _Becker, J._

COURT OF APPEALS DIV I
STATE OF WASHINGTON
2014 MAR 17 AM 10: 54