IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ABRAHAM GHORBANIAN, | No. 83361-8-I |
| Appellant, | |
| v. | DIVISION ONE |
| GREEN GROTTO, LLC, a Washington limited liability company; STEPHEN J. WANNENMACHER and JANE DOE WANNENMACHER, husband and wife, and their marital community; GEORGE JAMES GARRETT and JANE DOE GARRETT, husband and wife, and their marital community; and JUDITH ROSALIE JAMES and JOHN DOE JAMES, husband and wife, and their marital community, | UNPUBLISHED OPINION |
| Respondents. | |

SMITH, C.J. — Abraham Ghorbanian filed suit against Green Grotto, LLC and Stephen Wannenmacher for breach of a commercial lease and waste, and against George Garrett and Judith James for breach of the guaranty backing the lease. The trial court awarded fees to the defendants after a bench trial in which it found that Ghorbanian had suffered no damages. Ghorbanian appeals, contesting whether a fee provision in the guaranty provides recovery for breaches of the lease, whether nonparties to the guaranty may recover fees under it, and the amount of the fee award. We conclude that the guaranty provides recovery, Ghorbanian's challenge to who may recover was not timely

Citations and pin cites are based on the Westlaw online version of the cited material.

raised, and the trial court did not abuse its discretion when determining the amount of the fee award. We affirm.

FACTS[1]

Ghorbanian owned a house in Issaquah in which he resided until 2007. Over the next several years, the house was only sporadically occupied. In June 2016, Green Grotto contacted Ghorbanian about renting the property, seeking a location for its cannabis retail business. Ghorbanian prepared, and the parties executed, a 36-month lease to begin in August 2016. Green Grotto and Stephen Wannenmacher signed the lease, which was backed by the personal guaranties of Wannenmacher, George Garrett, and Judy James. Addenda enacted over the lease's lifetime added and removed guarantors until only Garrett and James remained. The guaranty included a provision awarding attorney fees to the prevailing party in any litigation "arising out of or in connection with" the guaranty.

Green Grotto had signed the lease without first visiting the house. Upon taking possession, its dilapidated state became clear. Among other concerns: the yard was unmaintained; trash was strewn about; windows were broken; floors were uneven or missing sections of wood; sheetrock had been removed from many parts of the house; signs of water damage suggested roof leakage; the kitchen was stripped of appliances and cabinets; an abutting carport was structurally unstable; and there were signs that squatters had lived in the basement. Green Grotto significantly renovated the property by painting, adding

---

[1] The following facts concerning the underlying dispute are drawn primarily from the trial court's unchallenged findings of fact and conclusions of law.

new siding, flooring, and internal walls, fixing the windows, finishing the basement, installing an alarm system, and adding new electrical and light features, among other alterations. Green Grotto obtained Ghorbanian's approval to make these changes.

Despite its efforts, however, Green Grotto was unable to obtain the land use and grading permits necessary to operate its business on Ghorbanian's property. It stayed current on its rent payments and returned keys to Ghorbanian in mid-September 2019.

Shortly thereafter, Ghorbanian contacted Green Grotto expressing surprise at the extent of the alterations and demanding that Green Grotto return the property to its "original condition," as required by the lease. He began exploring the possible costs of restoring the house for residential use, but instead listed the house and sold it for 1.4 million dollars in January 2020.

Then, in March, he initiated this lawsuit against Green Grotto and the guarantors (collectively "Respondents") pleading claims of breach of contract, contractual waste, and breach of the guaranty. The Respondents pleaded counterclaims of fraudulent inducement, breach of implied covenants of good faith and fair dealing, unjust enrichment, and violations of the Washington Consumer Protection Act, ch. 19.86 RCW. Each of these counterclaims was brought on behalf of all the Respondents save for the unjust enrichment claim, which only Green Grotto pleaded.

The suit proceeded through summary judgment and a bench trial. The court dismissed all but one of the Respondents' claims at summary judgment and

they voluntarily dismissed the remaining counterclaim before trial. The court concluded as a matter of law that the Respondents had breached a lease requirement to return the property to its original condition as a residential property, but it preserved determination of the extent of damages based on that violation for trial. Concluding that issues of fact existed, it also allowed Ghorbanian's other claims to go to trial.

The court ruled for the Respondents in its posttrial findings of fact and conclusions of law, issued on June 11, 2021. It found that the Respondents had breached no provision other than the requirement to return the house to its original condition, and found that they had not committed waste. Concerning the original condition provision, it found that Ghorbanian had suffered no damages, whether calculated as lost rents or diminished market value. It concluded that "[a]lthough Plaintiff is successful in proving breach, Green Grotto is the substantially prevailing party in this case. Green Grotto's entitlement to reasonable attorneys' fees and costs shall be assessed and determined by separate post-trial motion." It dismissed Ghorbanian's claims with prejudice.

Ghorbanian did not ask the court to reconsider its findings and conclusions save through a letter to the court dated July 21. There, he claimed that damages should have included a calculation of "overholding," asserting that Green Grotto remained in possession of the property after the end of the lease. The court treated this as a motion for reconsideration—which must be filed within 10 days of the order challenged under CR 59(b)—and denied it.

4

The Respondents requested fees and costs. The court granted the motion in a July 30 order and judgment, relying on the prevailing party determination it had made in its findings of fact and conclusions of law. The court found that Ghorbanian's claims "arose out of and/or in connection with" the guaranty.

It amended its judgment on August 5, awarding $301,551.56 instead of the original $290,332.64. Respondents had represented they incurred fees of $409,226.94 and costs of $32,054.05. In addition to those fees and costs, the court had awarded $3,500 for the motion for fees itself. The court had then reduced the pretrial and trial fees by 35 percent because it found excessive billing and to avoid awarding fees incurred as the result of the Respondents' counterclaims. In its first order, however, it had erroneously reduced not only the relevant attorney fees but also the costs. Its amended order corrected this calculation error, reducing only the fees.

Ghorbanian moved for reconsideration on August 10. He challenged not only the supplemental judgment and re-raised his overholding argument, but also the court's findings from two months earlier that he had suffered no damages and that the Respondents had been the substantially prevailing parties. But the same day he filed this motion, he struck it. He refiled an "amended" motion for reconsideration two days later, this time additionally claiming to have newly discovered evidence about the condition of the house before Green Grotto's lease began. The court granted Ghorbanian's motion for reconsideration in part,

calling for briefing only on the overholding issue.  It denied this last part of his reconsideration motion on October 14.

Ghorbanian appeals.

ANALYSIS

Ghorbanian raises several issues on appeal.  First, he contends that "[i]t was error for the trial court to award fees because the claims did not arise out of the Guaranty," which included a fee provision while the lease did not.  Second, in his reply brief, he asserts that the non-guarantors, as non-parties to the guaranty itself, cannot recover under its fee provision.  Finally, he contests whether the trial court properly exercised its discretion in the amount of the fee award.

Fees and Costs Arising Out of Or Connected to the Guaranty

Ghorbanian's first issue concerns whether the fee award was improper because some of his claims were unrelated to the guaranty.  The guaranty directs that

> [i]f either party hereto participates in an action against the other party arising out of or in connection with this Guaranty, the prevailing party shall be entitled to have and recover from the other party reasonable attorneys' fees, collection costs and other costs incurred in and in preparation for the action.

Ghorbanian asserts that his claims, rooted for the most part in the terms of the lease, were not "arising out of or in connection to" the guaranty and the guaranty's fee provision cannot, as a result, support an award of unrelated fees and costs.  Respondents disagree, but also contend that Ghorbanian did not timely appeal this issue.

We first address the threshold timeliness issue.  Parties must give notice of appeal within 30 days after the entry of the decision they seek to appeal. RAP 5.2(a).  But that deadline is tolled when a party files a timely motion for reconsideration.  Cox v. Kroger Co., 2 Wn.App.2d 395, 409, 409 P.3d 1191 (2018).  Ghorbanian gave notice on November 12, 2021.  Only the trial court's October 14 denial of his motion for reconsideration was issued within 30 days before that notice.  His "amended" August 12 motion for reconsideration itself, meanwhile, was only timely in its arguments about the trial court's August 5 supplemental judgment and order awarding fees and costs.  See CR 59(b) (establishing 10 day period within which to timely bring reconsideration motion).

Faced with these facts, a commissioner of this court previously ruled that only the August 5 order was properly before this court.  A panel of this court then denied a motion from Ghorbanian to modify that ruling.  Ghorbanian appealed to the Supreme Court, whose deputy commissioner affirmed.

Therefore, we will not consider any decision made by the trial court before the August 5 order.  This means that we will not reconsider its conclusion that Green Grotto prevailed, which was made in its findings of fact and conclusions of law issued June 11.  Those findings and conclusions, however, postponed assessment of the Respondents' "entitlement to reasonable attorneys' fees and costs."  Only in its July 30 order, amended on August 5, did the court first determine (1) that the Respondents *were* entitled to fees and (2) the amount of

7

those fees. Following the commissioner's ruling, we will only review the provisions contained in that order.[2]

We determine that defending against claims resulting from breached conditions of the lease constituted action "arising out of or in connection to" the guaranty. The guaranty incorporated the terms of the lease. The guarantors were interested in defending against claims based in the terms of the lease, since they were potentially liable for any breach of those terms. Though that defense may not have, strictly speaking, arisen out of the terms of the guaranty, the lease and the guaranty were interwoven such that the defense was "in connection to" the guaranty; the two contracts were enacted together, interrelated, and concerned the same financial venture, and the guarantors were party to the lawsuit only because of the guaranty.

Though his implicit concession is not controlling, Ghorbanian himself appears to have adopted this reading of the guaranty as early as his complaint. He sued Garret and James in their capacity as guarantors but requested fees from "all defendants" under any relevant provision. Since the lease contains no fee provision, this could only have been the guaranty's fee provision.

---

[2] Neither Ghorbanian's initial, quickly stricken motion for reconsideration, filed August 10, nor his amended motion, filed two days later, timely challenged the July 30 order. See CR 59(b) (establishing 10 day deadline). The amended judgment does not appear to have changed any of the decisions made in the first judgment, only correcting a calculation error, and so Ghorbanian's motions for reconsideration may not have been timely with respect to the trial court's decision to grant fees. But Respondents do not raise this as an issue and in light of our decision to affirm, we decline to consider whether it might otherwise be relevant.

The trial court therefore did not err in determining that the Respondents were entitled to fees and costs incurred as a result of their defense against Ghorbanian's non-guaranty-based claims.

### Who is Entitled to Fees Under the Guaranty

In a related argument, Ghorbanian contends for the first time in his reply brief that because Green Grotto and Wannenmacher were parties only to the lease and not the guaranty, they cannot be awarded fees. This argument is barred because "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We do not choose to exercise our discretion to reach it.

### Amount of the Trial Court's Fees and Costs Award

What remains of Ghorbanian's appeal asks whether the trial court abused its discretion when it awarded $301,551.56 in fees and costs to the defendants, and whether it created an adequate record for review in the process. We conclude that the record is adequate and that the trial court did not abuse its discretion.

Washington calculates the quantity of fees and costs a party is entitled to using the "lodestar" method. Mahler v. Szucs, 135 Wn.2d 398, 433, 957 P.2d 632 (1998). Under this methodology, the party seeking fees bears the burden of demonstrating the fees' reasonableness and must provide contemporaneous records documenting hours worked, describing the work performed, and noting the experience of the attorney who performed it. Mahler, 135 Wn.2d at 433-34.

The trial court must then determine (1) whether counsel expended a reasonable number of hours on the case, considering in the process whether services were duplicative or unnecessary, and (2) what the reasonable hourly rate of compensation was for this work. Mahler, 135 Wn.2d at 434. The product of the reasonable hours worked and the hourly rate then becomes the "lodestar fee." Mahler, 135 Wn.2d at 434. As a final step in the process, the trial court retains discretion to adjust the final fee award upward or downward, deviating from the initial lodestar fee. Mahler, 135 Wn.2d at 434.

A trial court's decisions concerning the amount of fees and costs awarded are reviewed for abuse of discretion. Mahler, 135 Wn.2d at 435. "A court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons." Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). The trial court must also create a record adequate to support review, which entails making findings of fact and conclusions of law on the lodestar elements. Mahler, 135 Wn.2d at 435. For instance, the court in Mahler reversed where the trial court did not make *any* findings or conclusions about reasonableness of services and hourly rates. 135 Wn.2d at 435.

Here, the trial court issued written findings and conclusions. It found that the hourly rates submitted by defendants' counsel were reasonable. It also found that the defendants' accounting of their hours worked, the type of work, the category of attorney who performed the work, and the costs incurred was adequate. But it reduced the Respondents' associated lodestar fee by 35

10

percent because: (1) the court concluded that the Respondents' request of $409,226.94 in fees was unreasonable in light of the claims at issue; (2) the Respondents' unsuccessful counterclaims were dismissed at summary judgment; and (3) the court concluded the defense's 245 hours of trial preparation were excessive given the claims.

Contrary to Ghorbanian's assertions, these findings and conclusions are adequate for our review. They specifically address reasonableness of hours and hourly rates—the factors by which the trial court calculates the resulting lodestar fee. And they explain the court's reduction of the requested award. Ghorbanian asserts that the record supporting the court's 35 percent reduction in fees is insufficient and that the reduction appears arbitrary. He contends, essentially, that the trial court must account for every dollar awarded through a calculation of reasonable hourly rate multiplied by reasonable hours worked. This is a misapplication of the lodestar method, however, which expressly considers reductions or increases in fee awards *after* the initial lodestar fee has been calculated.

Further, the trial court did not abuse its discretion in awarding this amount of fees and costs. Relying on its previous finding—a finding never timely challenged—it concluded that the Respondents prevailed at trial. It then reduced the award to account for the defendants' unsuccessful counterclaims and excessive services. Ghorbanian's arguments in opposition are not compelling. He asserts that the court abused its discretion by failing to deny or apportion fees proportionately to fees he incurred in addressing the defendants' counterclaims,

11

citing case law that indicates such proportioning can be appropriate. See Crest, Inc. v. Costco Wholesale Corp., 128 Wn. App. 760, 772, 115 P.3d 349 (2005) ("When there are several conflicting claims at issue, a defendant is awarded attorney fees for those claims it successfully defends, and plaintiff is awarded attorney fees for those claims upon which it prevails, and the awards should be offset."). But in light of the court's never-timely-challenged finding, which established that Ghorbanian did not prevail, this is precisely what the court did when it reduced its award because of the Respondents' unsuccessful counterclaims. The court granted the prevailing parties an award of fees related to all claims on which they prevailed, but granted no more.

We conclude that the trial court did not abuse its discretion when calculating the amount of the Respondents' fee award.

### Fees on Appeal

Respondents request fees on appeal. We may award fees where applicable law grants a party the right to recover. RAP 18.1. The guaranty's fee provision awards fees and costs to the prevailing party. A contractual fee provision, such as that in the guaranty, that supports an award of fees at trial also supports an award on appeal. Thompson v. Lennox, 151 Wn. App. 479, 491, 212 P.3d 597 (2009). As the parties prevailing on appeal, we award fees to the guarantors under the guaranty's fee provision.

Here, Ghorbanian again contends that Green Grotto and Wannenmacher, as nonparties to the guaranty, cannot benefit from its fee provision and asks us to reduce the fee award "proportionately." We decline to do so. Every issue on

appeal relates to the propriety of the fee award at trial and therefore concerns the guarantors. All respondents are represented by the same counsel. Whether Green Grotto and Wannenmacher are parties to the guaranty is therefore irrelevant to determining the amount of the guarantors' fee award.

We affirm.

_____
Smith, C.J.

WE CONCUR:

_____      _____
Bowman, J.                   Mann, J.